Larry Joe HOPKINS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17309.

Court of Criminal Appeals of Oklahoma.

Aug. 23, 1972.

Rehearing Denied Sept. 11, 1972.

Ward, Brown & Perrault, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge.

Appellant, Larry Joe Hopkins, hereinafter referred to as defendant, was charg-

ed, tried and convicted in the District Court of Tulsa County, Oklahoma, for the offense of Second Degree Burglary, After Former Conviction of a Felony; his punishment was fixed at twenty (20) years to sixty (60) years imprisonment, and from said judgment and sentence, an appeal has been perfected to this Court.

At the trial, Rex Apker testified that at approximately 2:25 p. m. on the 4th day of October 1968, he observed the defendant and James Clinton Byrne walk to the front porch of the G. R. McKinnell home in Tulsa. They rang the doorbell and looked through the picture window. They then proceeded to walk toward the rear of the house. He testified that he noticed them because he knew they didn't "belong in that neighborhood."

Kathryn Ramsey, age eleven, testified that at approximately 2:25 p. m. she observed James Clinton Byrne (the co-defendant) walking in front of the McKinnell residence.

Mrs. Robert Stroup testified that she lived three doors east of the McKinnells. On the afternoon of October 4, 1968, she observed a yellow car parked in the street which was a "stranger" to the neighborhood. She testified that she observed the defendant and Byrne walking away from the vehicle.

G. R. McKinnell testified that he arrived home from work the afternoon of October 4, at approximately 4:45 p. m. and determined that someone had gained entry to his house by prying open the den door in the back of the house. He testified that he and his wife's coin collection, a .38 pistol and several other items were missing from the house.

Detective Dennit Morris testified that he investigated the burglary at the McKinnell residence. He subsequently showed a group of six photographs to Mrs. Stroup who identified pictures of the defendant and Byrne. At approximately 7:00 p. m. on October 16, 1968, he and Detective Johnson went to the Byrne residence. They knocked on the front door and heard some-

one running through the house, waited a few minutes, and then opened the door and went inside. They found the defendant and Byrne "halfway in the closet" of a bedroom with the lights out. He identified a screwdriver which was laying in plain view on the bed in the bedroom in which the defendant and Byrne were found. As the officers were placing the defendant and Byrne in the patrol car, Byrne said "that he ain't stealing no more in the daytime." (Tr. 66) He testified that he and Johnson took the screwdriver found in the bedroom to the McKinnell residence and compared it with the pry marks on the door. He testified that in his opinion "they matched perfectly." (Tr. 65)

Witness McKinnell was recalled and testified that the officers came to his house on the evening of October 16, and compared a screwdriver with the marks made in his door. He testified that he cut the section from the doorway which contained the pry marks and the same was introduced into evidence.

Officer Johnson's testimony did not differ substantially from that of the witness Morris.

Sergeant Guss Jones testified that he arrived at Byrne's residence as Detectives Morris and Johnson were in the driveway with the defendant and Byrne. He heard Byrne say "He was going to have to stop stealing in the daytime." (Tr. 114)

The defendant did not testify nor was any evidence offered in his behalf.

■ The first proposition asserts that the trial court erred in not sustaining defendant's motion to suppress the screwdriver. Defendant argues that the evidence should have been suppressed because of an unreasonable search and seizure and that the officers did not announce their authority or purpose before opening the unlocked door and entering the defendant Byrne's residence. Title 22 O.S., § 197 provides generally that to make an arrest without a warrant an "officer may break open an outer or inner door or window of a dwelling house, if, after notice of his office and

purpose, he be refused admittance." In Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, the United States Supreme Court recognized the existence of "exigent circumstances" which would constitute an exception to the California statute requiring notice of authority and purpose prior to the breaking of a door. The Court cited with approval the case of People v. Maddox, 46 Cal.2d 301, 294 P.2d 6, wherein the California court stated:

"It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. (Read v. Case, 4 Conn. 166, 170, 10 Am.Dec. 110; see Rest., Torts, § 206, com. d.) Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance."

In the instant case, Officer Morris had personal knowledge that a felony had in fact been committed and had reasonable cause to believe that the defendant and Byrne had committed the same. We are of the opinion that when the officers knocked on the door, heard footsteps running through the house, and no one answered the door within several minutes, that such "exi-gent circumstances" existed to allow the officers to lawfully enter without the normally required announcement of their office and purpose. Having decided that the defendant's arrest was lawful, we further hold that the seizure of the screwdriver which was laying in open view on the bed in the room where the defendant was arrested was likewise lawful.

■■ The second proposition contends that the court erred in admitting the statement of the co-defendant Byrne to the effect that "I ain't going to do any more stealing in the daytime." We need only observe that the defendant and the co-defendant were tried together and was admissible as tending to prove the guilt of the co-defendant Byrne. The record does not reflect that the defendant Hopkins objected to the testimony of Byrne's statement at the trial and therefore will not be permitted to raise this issue for the first time on appeal.

The final proposition asserts that the evidence as a whole was insufficient to sustain the guilt of the defendant Hopkins. We are of the opinion that the evidence, although circumstantial, was sufficient to sustain a conviction for Burglary in the Second Degree. We have repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Johnson v. State, Okl.Cr., 482 P.2d 951.

■ In conclusion, we observe that the "good time credit" instructions were given to the jury in the second stage of the proceedings. Judgment and sentence is accordingly MODIFIED to a term of not less than ten (10) nor more than thirty (30) years imprisonment and as so modified, the judgment and sentence is affirmed. Modified and affirmed.

SIMMS and BRETT, JJ., concur.