Argued and submitted January 4, reversed and remanded September 18, reconsideration denied November 8, petition for review denied November 26, 1985 (300 Or 332)

In the Matter of Bilal ("Bill")
Qutub, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Appellant,*

*v.*

QUTUB,
*Respondent.*

(64,141-A; CA A30791 [control])

In the Matter of David Patrick
Gilkey, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Appellant,*

*v.*

GILKEY,
*Respondent.*

(73,204; CA A30792)
(Consolidated cases)

706 P2d 962

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Salem.

Stephen A. Houze, Portland, argued the cause for respondent Qutub. With him on the brief were Birkland, Koch and Houze, Portland.

Richard D. Cohen, Portland, filed the brief for respondent Gilkey.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

In this consolidated appeal the state appeals from orders of the juvenile court that suppressed marijuana and other evidence that the police seized in several searches. ORS 419.561(6)(c). The police entered the residence of Stephen Hill and arrested him pursuant to an arrest warrant. They searched the house without a search warrant because they believed other people were there who might help Hill escape. In that search the police did not see other people but did see marijuana and other incriminating evidence in plain view. They then photographed, but did not seize, the evidence. About two hours later defendants, both juveniles, were arrested in the house when they emerged from an attic crawl space where they had been hiding. Shortly thereafter the police returned with a search warrant and seized the marijuana and other evidence. The state charged both defendants in the juvenile court with several counts respecting possession, delivery and manufacture of marijuana and with hindering prosecution.

Before an adjudicatory hearing, the court granted defendants' motion to suppress the evidence seized on the grounds that (1) the police violated the "knock and announce" requirement and (2) the search was illegal, because it was conducted after Hill's arrest and "the police officers did not have probable cause to believe that there were dangerous people within the residence." It also suppressed other evidence obtained in subsequent searches of Hill's house and other locations on the ground that that evidence was the "fruit of the poisonous tree." We reverse.[1]

We review juvenile court proceedings *de novo*. ORS 419.561(4). We find the following facts from the record. The police had sought Hill for about one year on an arrest warrant for first degree arson and forgery. They learned that, under the name Steven Davidson, Hill had rented a house in Aloha. They knew that he had "vowed not to return to prison," and they devised a plan to arrest him. Detective Royster, in civilian clothes, would ring the front doorbell and ask for

---

[1] The cases of Gilkey and Qutub are consolidated on appeal. Gilkey stipulated to the facts presented at the hearing on the Qutub motion. The court entered separate orders, identical in substance in each case.

Steven Davidson. Detective Frank would wait in uniform in an unmarked car parked in the driveway. If Hill came to the door, Royster and Frank together would make the arrest. Officer Taylor, in uniform, would guard the back of the house.

Royster rang the front doorbell. He heard one or more persons moving around inside and saw a figure move back and forth three times behind a frosted glass window by the door. The footsteps appeared to be those of a person or persons wearing shoes. Royster rang the bell again. Hill opened the front door, but a closed glass storm door was still between Hill and Royster. Royster asked Hill if he was Steven Davidson. Hill replied affirmatively and asked Royster what he wanted. Royster said that he was with the telephone company, opened the storm door and asked if he could talk to Hill. Hill was looking at Royster "rather hard" when Royster next asked if he could come in, and Hill replied in a loud voice, "No, I don't want you in here" and reached for the storm door handle. Royster sensed that things were going "down hill quick" and that he could not wait for Frank. He pushed inside the house, and Hill retreated. Just inside the house, Royster drew his gun and yelled that he was a "police officer" and "[I] have a warrant for your arrest." Royster immediately pushed Hill up against the entry way wall and began to handcuff him. Hill was not wearing shoes.

Frank arrived. Royster told him he thought other people might be in the house. Frank walked through the living room on his way to the back door to let in Taylor. In the living room he saw a sleeping bag, two or three pairs of tennis shoes and fresh take-out food sufficient for more than one person. Hill was talking loudly, in a "stage whisper," repeatedly referring to "you police," and denying that there was anyone else in the house. Royster testified that Hill was talking as if he were "warning somebody else and I had fear for my own safety." Royster recalled Hill's vow not to return to prison and was afraid of what someone else might do to prevent the arrest. He kept his gun drawn.

The three officers decided to search the house for other people. They testified that their concern was for their safety in effecting Hill's arrest. Royster stayed with Hill; Frank and Taylor, with guns drawn, searched the three-level house for five to fifteen minutes. During that search they saw

a substantial marijuana growing-and-distribution operation in plain view: a large number of plants in the attached garage and a "grow room" and a packaging-and-records operations in upstairs bedrooms.

The suppression order states:

"The court, after listening to the testimony of the witnesses and receiving the exhibits; and after listening to the statements and arguments of counsel, makes the following findings of fact.

"1. Officer Royster attempted to gain entry into the dwelling by the use of subterfuge.

"2. Consent to enter was withheld.

"3. Entry by the Officer was gained prior to an announcement of his identity and purpose. Based on these findings of fact the Court finds as a matter of law that entry was illegal.

"4. The Court further finds that the police officers did not have probable cause to believe that there were dangerous people within the residence. The Court further finds that the search of the residence was conducted after the suspect was taken into custody. Based upon these findings the Court finds that the search of the building was without legal justification as a matter of law.

"The Court is of the opinion that the good faith of the officers conducting a search of the residence is not relevant to the issues before the Court on this motion; however, the State has requested a finding on the issue of good faith and the Court therefore finds that the officers acting in good faith believed they had a right to search the residence because of suspicious activity therein and because of a concern that they were in a potentially dangerous situation. Based upon these findings the Court finds that the motion to suppress is well taken.

"* * * * *

"The motion to suppress is hereby granted in its entirety."

The court also ruled orally:

"I can't find that in this case that the police officers had any reason to believe that there were dangerous people within the residence. I'll find that they had reason to believe that there was someone in the residence other than just the defendant on the basis of Officer Royster's testimony, that people with shoes on were moving back and forth. That certainly is

suspicious, but I'm not satisifed that that would entitle the officers to then search down a whole dwelling on the chance that there were not only people present but that these people were dangerous and that these people were in concert with the person arrested."

■ ■ Although the findings of fact in the first three paragraphs of the order are correct, they do not require the conclusions that the entry or the subsequent search of the house was illegal. The "knock and announce" statute, ORS 133.235(6), provides that in making an arrest:

"If after giving notice of the officer's identity, authority and purpose, the officer is not admitted, the officer may enter the premises, and by a breaking, if necessary."

An entry made without the required notice is not necessarily a violation of the statute, which codifies the requirements of the Fourth Amendment,[2] *see State v. Tweed,* 62 Or App 711, 715-16, 663 P2d 38 (1983). Prevention of an arrestee's escape and protection of a police officer's safety are two recognized exceptions to the Oregon statutory and federal constitutional "knock and announce" rules. *See Sabbath v. United States,* 391 US 585, 591 n 8, 88 S Ct 1755, 20 L Ed 2d 828 (1968); *Ker v. California,* 374 US 23, 40-41, 83 S Ct 1623, 10 L Ed 2d 726 (1963) (opinion of Clark, J.); *State v. Miller,* 43 Or App 421, 602 P2d 1141 (1979); *State v. Newman,* 12 Or App 266, 506 P2d 523 (1973); *State v. Steffes,* 2 Or App 163, 465 P2d 905, *rev den* (1970); *see also State v. Valentine/Darroch,* 264 Or 54, 69, 504 P2d 84 (1972) (O'Connell, C. J., dissenting).

■ Royster reasonably believed that his safety was threatened or that Hill would try to escape. If Royster had disclosed his identity and purpose before entry, Hill would have had a chance to secure the door, obtain help or escape. Accordingly, Royster did not need to comply with the knock and announce requirement when he entered the house. The entry was lawful, and Hill's arrest was lawful.

■■ The subsequent warrantless search of the house also was lawful as incident to Hill's arrest. Such a search is

---

[2] Unlike the Fourth Amendment, Article I, section 9, of the Oregon Constitution does not require that the police announce their identity and purpose before entering a house to serve an arrest warrant. *See State v. Bishop,* 288 Or 349, 605 P2d 642 (1980); *State v. Valentine/Darroch, infra; see also State v. Davis,* 295 Or 227, 235-36, 666 P2d 802 (1983).

justified if it is to protect the officer's safety and is objectively reasonable under the circumstances, including time, place and intensity. *See Chimel v. California,* 395 US 752, 762-64, 89 S Ct 2034, 23 L Ed 2d 685 (1969); *Preston v. United States,* 376 US 364, 367, 84 S Ct 881, 11 L Ed 2d 777 (1964); *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). Contrary to the trial court's ruling, it is not necessary that the police have probable cause to believe that there were dangerous people in the residence in order to justify the search.

The police officers had an objectively reasonable belief based on specific, articulable facts that it was dangerous to try to arrest Hill and that there were other people hiding in the house whom Hill was attempting to warn of the presence of the police. The officers knew that Hill had vowed not to return to prison. Royster's observations at the front door, Frank's observations in the living room and Hill's apparent attempts to warn others gave the police a reasonable belief that others were in the house. The officers' search was not based on a pretext but was conducted because of a reasonable concern for their safety.[3] Moreover, the search was brief, confined in place and intensity and conducted immediately after Hill's arrest. The officers searched for persons, not things. It was reasonable for them to look throughout the house and attached garage for persons they believed were in the residence. During the search, the officers saw the marijuana operation in plain view in the garage and upstairs bedrooms where the police were lawfully present.

 A search incident to an arrest undertaken to protect the arresting officers' safety ordinarily is limited to the arrestee's person and the area "within his immediate control," that is "the area from within which he might gain possession of a weapon * * *." *Chimel v. California, supra,* 395 US at 763, 766-67. Even if Hill could not obtain a weapon himself, however, the police held an objectively reasonable belief that there was a danger that he was attempting to use others in the house to resist his arrest. A search for those people was as justified as a search would be of the arrestee for weapons. *See State v. Super,* 37 Or App 731, 735-37, 588 P2d 106 (1978). The search was reasonable under all the circumstances. It was

---

[3] The juvenile court found that the officers had a good faith belief that they were in a potentially dangerous situation.

lawful as incident to Hill's arrest under both the state and the federal constitutions.

The state asserts on appeal, and defendant concurs, that "[a]t the beginning of the hearing on Qutub's motion to suppress evidence, it was agreed that if the [initial] search was invalid, the subsequent searches [conducted with warrants] were also invalid [as 'fruits of the poisonous tree']." The trial court, accordingly, suppressed the evidence obtained from the subsequent searches. The parties did not stipulate, however, that, if the initial search was *valid,* the subsequent searches, made with warrants, or defendants' warrantless arrests, were also valid. We reverse the trial court's order in its entirety, because the record provides no basis for us to determine whether we could affirm the trial court's suppression orders as they relate to the subsequent searches.

Reversed and remanded for trial.