In the Matter of Kristi Lou Gibson,
a Child.

STATE ex rel JUVENILE DEPARTMENT
OF LANE COUNTY,
*Appellant,*

*v.*

GIBSON,
*Respondent.*

(84-275; CA A34460)

718 P2d 759

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

James Larsen, Certified Law Student, Public Defender Services of Lane County, Inc., Eugene, argued the cause for respondent. With him on the brief was Robert C. Homan, Staff Attorney, Public Defender Services of Lane County, Inc., Eugene.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The state appeals from a juvenile court order suppressing certain statements that the juvenile made to the police. The central issue is whether her request, made during custodial interrogation, to speak to her mother invoked her Fifth Amendment right against compelled self-incrimination.[1] We hold that it did not. However, we find that the state did not prove that she validly waived that right, and we affirm on that basis.

Our review is *de novo.* ORS 419.561(4); *State ex rel Juv. Dept. v. Qutub,* 75 Or App 298, 300, 706 P2d 962, *rev den* 300 Or 332 (1985). The juvenile and her mother were arrested at a department store for using a stolen credit card. The juvenile was then 16 years of age. She and her mother were each handcuffed and placed in a police car, and Officer Antoine drove them to the police station. He told them not to speak to one another. At the police station, the juvenile and her mother were placed in separate rooms, and Antoine interviewed the juvenile. He advised her of her *Miranda* rights, and she stated that she understood them. She then asked if she could speak to her mother.[2] He told her that she could not, and she subsequently made incriminating statements. Antoine later tape recorded her statements during a second interview.[3]

---

[1] US Const, Amend V, provides:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

The privilege is applicable to juveniles in juvenile court proceedings. *In re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967).

[2] The only evidence concerning when this request was made is Antoine's testimony at the hearing on the juvenile's motion to suppress. The juvenile did not testify. Antoine stated that he was uncertain whether the request preceded or followed his reading of the *Miranda* warnings but that it was made before he questioned her. The lower court stated that the burden was on the state to prove when the request occurred and that, because the state had failed to do so, it would determine that fact against the state. Although we are not bound by the lower court's findings of fact, we also find that the request followed the *Miranda* warnings. It is more likely that the juvenile would ask to speak to someone, even her mother, after she had been informed that she had the right to speak to an attorney.

[3] Antoine also interviewed the juvenile's mother. The mother claims that she told either Antoine or another officer that she wanted to talk to an attorney before she or her daughter would talk to the officers. The trial court did not believe her testimony and therefore disregarded it. The juvenile has not pursued that issue on appeal.

A petition was filed in the juvenile court alleging that the juvenile had committed 13 counts of forgery in the first degree. ORS 165.013. She moved to suppress her statements to Antoine on the grounds that (1) she had asserted her right to counsel or its equivalent; (2) she had not waived her right to counsel or right to silence; and (3) her statements were not voluntary. The court granted her motion on the first ground.

The state argues that the juvenile's request for her mother was just that and that it was not tantamount to a request for an attorney. The juvenile argues that her request should be interpreted as the equivalent of an adult's request for an attorney and that, under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), and *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), all questioning should have ceased until she had spoken with her mother.[4]

In *Miranda,* the court held that, in order to use statements obtained during custodial interrogation, the state must warn the accused before such questioning of the right to remain silent and the right to counsel:

> "* * * Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." 384 US at 473-74. (Footnote omitted.)

Any statements obtained in violation of those rules are not

---

[4] The juvenile also asserts state constitutional arguments. We will not consider them, because she did not raise them in the lower court.

admissible against the accused, at least during the state's case in chief. *Miranda v. Arizona, supra,* 384 US at 479; *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971); *State v. Mills,* 76 Or App 301, 710 P2d 148 (1985), *rev den* 300 Or 546 (1986) (interpreting Oregon Constitition). Applying *Miranda* to this case is problematic, because the juvenile did not expressly state that she wished to remain silent, nor was her request to speak to her mother necessarily an indication that she wished to remain silent. Furthermore, she did not ask to speak to an attorney.

The juvenile relies on *People v. Burton,* 6 Cal 3d 375, 99 Cal Rptr 1, 491 P2d 793 (1971), for the proposition that a juvenile's request during custodial interrogation to consult his or her parents is *per se* an invocation of the Fifth Amendment right. *But see People v. Riley,* 49 Ill App 3d 304, 7 Ill Dec 145, 364 NE2d 306 (1977), *cert den* 435 US 1000, 98 S Ct 1657, 56 L Ed 2d 91 (1978); *State v. Young,* 220 Kan 541, 552 P2d 905 (1976). Just before the commencement of custodial interrogation and before the police had advised him of his *Miranda* rights, the 16-year-old defendant in *Burton* asked to see one of his parents. The police denied that request and read him the *Miranda* warnings. The defendant stated that he understood his rights and that he would waive them. He later made incriminating statements. The trial court denied his motion to suppress, and he was convicted. A California Court of Appeal affirmed his conviction.

The California Supreme Court reversed. The court noted that it had previously decided that when the defendant does not expressly assert his right to silence or right to counsel, any words or conduct which reasonably appear inconsistent with a present willingness to discuss the case freely and completely with police at that time must be held to amount to an invocation of the Fifth Amendment right. 6 Cal 3d at 381-82. It concluded that the defendant's request to see one of his parents satisfied that standard:

> "* * * It appears to us most likely and most normal that a minor who wants help on how to conduct himself with the police and wishes to indicate that he does not want to proceed without such help would express such desire by requesting to see his parents. For adults, removed from the protective ambit of parental guidance, the desire for help naturally manifests in a request for an attorney. For minors, it would seem that the

desire for help naturally manifests in a request for parents. It would certainly severely restrict the 'protective devices' required by *Miranda* in cases where the suspects are minors if the only call for help which is to be deemed an invocation of the privilege is the call for an attorney. It is fatuous to assume that a minor in custody will be in a position to call an attorney for assistance and it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks—a parent or guardian. It is common knowledge that this is the normal reaction of a youthful suspect who finds himself in trouble with the law.

"* * * * *

"Accordingly we hold that when, as in the instant case, a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege. The police must cease custodial interrogation immediately upon exercise of the privilege. The police did not so cease in this case, the confession obtained by the subsequent questioning was inadmissible, and, therefore, the admission of such confession was prejudicial per se and compels reversal of the judgment on all counts. * * *" 6 Cal 3d at 382-84.

Although *Burton* provides a reasoned application of *Miranda* to a difficult fact situation, the reasoning is of doubtful validity after the decision in *Fare v. Michael C.,* 442 US 707, 99 S Ct 2560, 61 L Ed 2d 197 (1979). In *Fare,* a 16-year-old boy was interrogated at a police station and, after having been advised of his *Miranda* rights, he asked whether his probation officer could be present during the questioning. The police told him that that was not possible at that time. He then told the police that he would talk to them without an attorney present and thereafter confessed to a murder. His motion to suppress his statement was denied, and his subsequent conviction was affirmed by the California Court of Appeal. The California Supreme Court reversed. *In re Michael C.,* 21 Cal 3d 471, 146 Cal Rptr 358, 579 P2d 7 (1978). It stated:

"In view of the emphasis which the juvenile court system places upon the close relationship between a minor and his probation officer, and in light of the probation officer's instructions in the present case that his ward contact him immediately in case of trouble, the 'normal reaction' of the

minor here would be to request consultation with his probation officer. Fearing that the police would take advantage of his ignorance, Michael wanted and needed the advice of someone whom he knew and trusted. He therefore asked for his probation officer—a personal advisor who would understand his problems and needs and on whose advice the minor could rely. By analogy to *Burton,* we hold that the minor's request for his probation officer—essentially a 'call for help'—indicated that the minor intended to assert his Fifth Amendment privilege. By so holding, we recognize the role of the probation officer as a trusted guardian figure who exercises the authority of the state as *parens patriae* and whose duty it is to implement the protective and rehabilitative powers of the juvenile court." 21 Cal 3d at 477. (Footnotes omitted.)

The United States Supreme Court reversed. It emphasized that the rigid rule in *Miranda* that questioning must cease upon a suspect's request for an attorney was based on "the unique role the lawyer plays in the adversary system of criminal justice in this country. Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts." 442 US at 719. In contrast, the Court stated, probation officers do not fill that role: they are not necessarily trained in the law, nor are they trained advocates. Furthermore, they do not owe an undivided loyalty to the accused, as do attorneys. They are employes of the state which is seeking to prosecute the accused, and they often owe a duty to report any wrongdoing by the accused, even when they learn that information from him. Finally, the communications between the accused and the probation officer are not privileged as are those between an attorney and client. The Court concluded:

"We thus believe it clear that the probation officer is not in a position to offer the type of legal assistance necessary to protect the Fifth Amendment rights of an accused undergoing custodial interrogation that a lawyer can offer. The Court in *Miranda* recognized that 'the attorney plays a vital role in the administration of criminal justice under our Constitution.' * * * It is this pivotal role of legal counsel that justifies the *per se* rule established in *Miranda,* and that distinguishes the request for counsel from the request for a probation officer, a clergyman, or a close friend. A probation officer simply is not necessary, in the way an attorney is, for the protection of the

legal rights of the accused, juvenile or adult. He is significantly handicapped by the position he occupies in the juvenile system from serving as an effective protector of the rights of a juvenile suspected of a crime." 442 US at 722. (Citation omitted.)

The Court also stated that the defendant's request was not *per se* a request to remain silent, because there was nothing inherent in that request indicating that he wished to remain silent. 442 US at 723-24. Finally, it held that the defendant had waived his Fifth Amendment right and that his statements were not coerced.[5]

We are aware of only two cases decided after *Fare* in which courts have addressed the issue presented here. In *United States ex rel. Riley v. Franzen,* 653 F2d 1153 (7th Cir), *cert den* 454 US 1067, 102 S Ct 617, 70 L Ed 2d 602 (1981), the court held that the 16-year-old juvenile's request during custodial interrogation to speak to his father was not a *per se* invocation of his Fifth Amendment right. Relying on *Fare,* the Court of Appeals first determined that the juvenile's request was not an invocation of his right to silence. 653 F2d at 1158-59. Addressing the right to counsel issue, it noted that, like the probation officer in *Fare,* the juvenile's father was not trained in the law, nor was he a skilled advocate. It also found no evidence of a parent-child privilege of confidentiality under the relevant state law. It recognized that the parent is in a significantly different position than a probation officer but nevertheless concluded that *Fare* was controlling:

"On the other hand, unlike the probation officer in *Fare,* Riley's father is not a state employee duty bound to report his son's wrongdoing. * * * This probably would be true in most cases. We believe, however, that the result in *Fare* is based primarily upon the Court's analysis of counsel's unique role in protecting a defendant's Fifth Amendment privilege and the inability of a probation officer to satisfy that role. * * * On this basis, we see no grounds upon which to distinguish the request in this case from the one at issue in *Fare.*" 653 F2d at 1160. (Citations and footnote omitted.)

---

[5] Justice Marshall, joined by Justices Brennan and Stevens dissented. He wrote: "*Miranda* requires that interrogation cease whenever a juvenile requests an adult who is obligated to represent his interests." 442 US at 729. In a separate dissent, Justice Powell agreed with the majority that the California Supreme Court had misinterpreted *Miranda,* but he disagreed with the majority's conclusion that the defendant had waived his Fifth Amendment right.

It specifically found *People v. Burton, supra,* unpersuasive in the light of *Fare.* 653 F2d at 1161. It thus concluded that the juvenile's request was neither an invocation of his right to silence nor of his right to counsel.[6] In contrast, the court in *People v. Castro,* 118 Misc 2d 868, 462 NYS2d 369 (NY Sup Ct 1983), stated that *Fare* was distinguishable:

> "* * * Suffice it to comment that the *Fare* rationale can readily be distinguished in New York, even from a constitutional point of view, in a situation where a juvenile requests to speak with his parents rather than with his probation officer. * * * The following are distinguishing factors to be considered: (a) long before the advice of counsel became sacrosanct, history and society as a whole has looked upon parents as the true and faithful guardians and protectors of their child's moral and legal rights as reflected in the following Divine imperative: 'Listen, my son, to the instruction of thy father, and forsake not the law of thy mother.' (Proverbs: I, 8.) Surely, this critical position and unique posture of a parent is not to be equated with that of a probation officer; (b) obviously the conflict of interest facing a probation officer is inapplicable to the role of a parent, who is especially capable of offering independent advice; and (c) as stated in [*Mtr.*] of *Michelet P.,* [70] A.D.2d 68, 75, 419 N.Y.S.2d 704 [1979], parent-child communications are privileged (also see [*Matter of A and M*], 61 A.D.2d 426, 403 N.Y.S.2d 375 [1978]) unlike the communications between a probation officer and a minor.

---

[6] The court left open the possibility that in some cases, a juvenile's request for a parent might be construed as an invocation of the Fifth Amendment right:

"To summarize, we do not hold that a juvenile's request for a parent or guardian must never be construed as a request for counsel or as an invocation of his Fifth Amendment privilege. Rather, we believe that the proper characterization of such a request depends upon an examination of the abilities of the parent or guardian requested on the one hand, and of the accused juvenile on the other. Lay parents must be distinguished from lawyers, or those with the ability to protect their child's Fifth Amendment privilege. Independent, older juveniles must be distinguished from younger ones, still living with their parents. 'If it was otherwise, [any] juvenile's request for almost anyone he considered trustworthy enough to give him reliable advice would trigger the rigid rule of *Miranda.' Fare v. Michael C.,* 442 U.S. at 723, 99 S.Ct. at 2571. Also, a request which manifests the juvenile's desire to see his parent in order to obtain an attorney must be treated differently from a request, such as the one in this case, in which there is no such manifestation. Finally, a single request should be viewed differently than repeated requests, especially if the repetitions are in response to a series of police questions regarding the crime under investigation. Under some circumstances, the latter properly may be viewed as an invocation of the suspect's right to silence, if not of his right to counsel." *United States ex rel. Riley v. Franzen, supra,* 653 F2d at 1161-62. (Brackets in original.)

"In other words, from a juvenile's point of view, the request to consult a parent is the equivalent of a request to consult an attorney, which pursuant to *Miranda v. Arizona, supra* amounts to an invocation of the Fifth Amendment privilege." 462 NYS2d at 377. (Some citations omitted.)

*See also United States ex rel. Riley v. Franzen,* 454 US 1067, 102 S Ct 617, 70 L Ed 2d 603 (1981) (Marshall, J., dissenting from denial of certiorari).

■       As we interpret *Fare* and the Court of Appeals opinion in *United States ex rel. Riley v. Franzen, supra,* we are constrained to conclude that the juvenile's request to speak to her mother was neither an invocation of her right to silence nor of her right to counsel. There was nothing inherent in her request that indicated that she did not want to speak to Antoine. *See Fare v. Michael C., supra,* 442 US at 723-24; *United States ex rel. Riley v. Franzen, supra,* 653 F2d at 1158-59. Indeed, such a request might be entirely consistent with a desire to speak to the officer.

■       We also conclude that her request was not an invocation *per se* of her right to counsel. Her mother simply was unable to fill the unique position that a lawyer fills in protecting an accused's rights that the Court in *Fare* stated is so critical in its *Miranda* decision. There is no evidence that her mother was either trained in the law or a skilled advocate. Furthermore, there is no parent-child privilege in Oregon which could have protected the juvenile's statements to her mother. Certainly, the parent-child relationship is significantly different from that of a juvenile and a probation officer. Parents owe no duty to the state to report their children's wrongdoing, and in most cases they would have their children's best interests at heart. However, it was not the presence of a bond of trust between the juvenile and the person with whom he requested to speak that was critical in *Fare*; it was the lawyer's unique ability to protect the juvenile's interest. The Court stated:

"The California Supreme Court, however, found that the close relationship between juveniles and their probation officers compelled the conclusion that a probation officer, for purposes of *Miranda,* was sufficiently like a lawyer to justify extension of the *per se* rule. * * * The fact that a relationship of trust and cooperation between a probation officer and a juvenile might exist, however, does not indicate that the

probation officer is capable of rendering effective legal advice sufficient to protect the juvenile's rights during interrogation by the police, or of providing the other services rendered by a lawyer. To find otherwise would be 'an extension of the *Miranda* requirements [that] would cut this Court's holding in that case completely loose from its own explicitly stated rationale.' * * * Such an extension would impose the burdens associated with the rule of *Miranda* on the juvenile justice system and the police without serving the interests that rule was designed simultaneously to protect. If it were otherwise, a juvenile's request for almost anyone he considered trustworthy enough to give him reliable advice would trigger the rigid rule of *Miranda.*" 442 US at 722-23. (Citations omitted; brackets in original.)

■ It follows that the close relationship between parent and child is not of itself a sufficient basis for extending the *per se* rule of *Miranda* to a juvenile's request to have a parent present or to talk to a parent. We conclude that the juvenile's request to speak to her mother was not an invocation of her Fifth Amendment right

■ The next inquiry is whether the juvenile waived that right. Under *Miranda,* "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 US at 475. The question is one of fact and is determined by an inquiry into the totality of the circumstances surrounding the interrogation. *Fare v. Michael C., supra,* 442 US at 724-25. Factors to consider include the juvenile's age, experience, education, background, and intelligence and whether the juvenile has the capacity to understand the *Miranda* warnings, the nature of the Fifth Amendment rights and the consequences of waiving them. *Fare v. Michael C., supra,* 442 US at 725.

■■ The juvenile was 16 when she was arrested; she had only been arrested once previously, for shoplifting. She had received the credit card in question from a call girl, who had obtained it from a customer. We are not persuaded by the state's portrayal of the juvenile as "no stranger to the law" merely on the basis of one arrest and her acquaintance with a call girl. Antoine advised her of her constitutional rights

before the first interview. After advising her and determining that she understood her rights, he began questioning her and she responded. There is no evidence in the record that he asked her if she waived the rights he had recited. The fact that she responded to questioning after being advised of her constitutional rights does not establish a waiver. *State ex rel Juv. Dept. v. Sanders,* 56 Or App 724, 643 P2d 384 (1982); *State v. McGrew,* 38 Or App 493, 590 P2d 755, *rev den* 286 Or 149, *cert den* 444 US 867 (1979). It is also significant that the juvenile asked to speak to her mother just before she was questioned as part of the totality of circumstances which we utilize in determining if there was an intelligent knowing and voluntary waiver of rights. The request indicates some uncertainty as to what she wished to do when faced with an obviously stressful situation. Based on her age, her relative inexperience with the law, the state's failure to show that she was asked whether she wished to waive her rights and her request to speak to her mother, we conclude that the state did not sustain its heavy burden of proving that the juvenile waived her rights.

Affirmed.