Argued and submitted October 16, 1995, affirmed January 3, petition for review denied April 30, 1996 (323 Or 153)

In the Matter of
Leroy Russell Cook, aka Rusty Butler, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF LINCOLN COUNTY,
*Respondent,*

*v.*

Leroy Russell COOK,
aka Rusty Butler,
*Appellant.*

(935791; CA A84920)

909 P2d 202

Jenny M. Cooke argued the cause and filed the brief for appellant.

David E. Leith, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Child appeals from an order finding him to be within the jurisdiction of the juvenile court because of acts which, if committed by an adult, would constitute murder, felony murder, criminal conspiracy, robbery in the first degree, unauthorized use of a vehicle and theft in the first degree. ORS 163.115(1)(a); ORS 163.115(1)(b)(G); ORS 161.450; ORS 164.415; ORS 164.135; ORS 164.055. Child argues that the court erred in admitting incriminating statements that he made to a police detective during custodial interrogation. Although our review of juvenile proceedings is *de novo*, ORS 419A.200; *State ex rel Juv. Dept. v. Qutub*, 75 Or App 298, 706 P2d 962, *rev den* 300 Or 332 (1985), the sole issue before us is the propriety of the court's ruling on child's motion to suppress. We affirm.

On the evening of December 27, 1993, child was brought to the Lincoln County Sheriff's Office for questioning regarding the murder of Marrs. Child was transported to the sheriff's office in the front seat of an unmarked patrol car by Detective Steele, who was dressed in plain clothes. Upon arrival at the sheriff's office, Steele brought child upstairs to his office. Steele advised child of his *Miranda*[1] rights and asked child if he understood those rights. Child indicated that he did. Steele then proceeded to question child regarding his whereabouts on the day that the murder occurred. Child initially denied any involvement with the murder, claiming that he had gone to Salem and had returned home later that same day. After further questioning, however, child admitted that he had witnessed the murder and told Steele that another suspect, Mohr, was responsible for the shooting. Child denied any further knowledge about the circumstances surrounding the murder until Steele told child that he could face the death penalty. Child then admitted that he knew Mohr was going to shoot the victim and that he, Mohr and at least two other juveniles had planned the crime in advance, in order to steal the victim's truck. On the following day, December 28, child reenacted the crime on videotape.

In its second amended petition to the juvenile court, the state alleged that child was within the court's jurisdiction

---

[1] *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

for acts which, if committed by an adult, would constitute aggravated murder, murder, felony murder, conspiracy to commit murder, robbery in the first degree, theft in the first degree and unauthorized use of a vehicle. Child moved to suppress all of the statements he had made during interrogation and the videotaped reenactment of the crime on the ground that they were involuntary and obtained in the absence of a valid waiver of his *Miranda* rights. Child further argued that the questioning should have ceased when his mother told police that she wanted child to have an attorney. The juvenile court ruled that child's waiver of his constitutional rights was valid and that his statements were voluntary up until the point in the interview that Steele told child that he could be subject to the death penalty. Statements made after that point and the videotaped reenactment were suppressed. The court also rejected child's argument that his mother had effectively invoked child's right to counsel.

At the close of the adjudicatory hearing, the juvenile court found, with one exception, that child had committed the acts alleged in the state's petition and subsequently entered an order of commitment.[2] On appeal, child assigns error to the court's failure to suppress all of the statements he made during the course of interrogation. Because the statements child made after mention of the death penalty were suppressed, the only statements at issue are those that were made before that point in the interrogation.

We begin by addressing whether child's waiver of his *Miranda* rights at the outset of the interrogation was valid. Child contends that we cannot conclude that he voluntarily waived his rights because the police failed to obtain an express waiver from him before questioning. That is incorrect. An express waiver of rights is not required as a matter of law under either the Oregon or federal constitutions. *North Carolina v. Butler*, 441 US 369, 373, 99 S Ct 1755, 60 L Ed 2d 286 (1979) ("waiver can be clearly inferred by the actions and words of the person interrogated"); *State v. Rivas*, 99 Or App 23, 781 P2d 364 (1989), *adhered to as modified* 100 Or App 620, 788 P2d

---

[2] The court dismissed the counts alleging acts that would constitute aggravated murder.

464, *rev den* 310 Or 122 (1990).[3] Rather, we determine whether child made a knowing, voluntary and intelligent waiver of his rights based on the totality of the circumstances existing at the time the waiver was made. *See State ex rel Juv. Dept. v. Gibson*, 79 Or App 154, 718 P2d 759 (1986) (identifying factors to consider in evaluating waiver of *Miranda* rights). The absence of an express waiver of rights is among the factors, which include the suspect's age, intelligence, education and experience, that we consider in making that determination. *Id.* at 164.

As previously noted, Steele informed child of his right to remain silent and his right to have a retained or appointed attorney present during questioning. He then confirmed that child understood those rights before any questioning occurred. Although child was 14 years old at the time of questioning, his level of education appears to have been appropriate for his age and there is no indication that he suffered from a physical or mental inability to comprehend Steele's warnings. *See State ex rel Juv. Dept. v. Sanders*, 56 Or App 724, 643 P2d 384 (1982) (child's intelligence a factor to be considered in assessing waiver of rights). Child had previously dealt with members of the Lincoln County Sheriff's Office on an informal basis and had been involved in two separate juvenile court proceedings where he was advised of his rights and represented by counsel on at least one occasion. No circumstances point to any confusion or misunderstanding on child's part. *See Gibson*, 79 Or App at 164-65 (juvenile's request to speak with her mother evidenced possible confusion regarding *Miranda* rights). Furthermore, we do not find any facts to suggest that child's waiver was obtained through the use of coercive tactics. The interrogation took place in Steele's office and no express or implied threats of force or promises of leniency preceded child's waiver. Under the totality of the circumstances, we conclude that child knowingly, intelligently and voluntarily waived his rights prior to questioning.

The voluntariness of child's statements made during questioning is also reviewed under a totality of the circumstances standard, which takes into account child's character

---

[3] In *Rivas*, we also rejected the so-called "interested adult rule," which would have provided juveniles the right to consult with a parent or concerned adult before waiving any rights and to have that adult present during questioning. 99 Or App at 30.

and the details of the interrogation. *State v. Davis*, 98 Or App 752, 780 P2d 807 (1989), *rev den* 309 Or 333 (1990). The test is whether the statements were freely made and not induced by physical or psychological coercion that, in the light of child's age, intelligence, experience, physical condition and other pertinent characteristics, may have undermined child's will. *Id.* at 754. We agree with the juvenile court that child's statements to Steele were voluntary up until the point at which the detective told child that he could be subject to the death penalty. Before that point, Steele questioned child calmly, never raising his voice or displaying any show of force, and he was attentive to child's needs.[4] Child appeared to be alert and responded appropriately to Steele's questions.

Child contends that Steele elicited incriminating statements by promising leniency in exchange for a confession. Child points specifically to one statement made by Steele during the course of questioning:

> "There's a difference between a person who is just there, and a person who actually does the killing, OK? * * * A lot of times they don't mean to be there, they don't mean for what happens to happen, but things just get carried away, and they get out of hand. The statements you told me about the events * * * and the statements of your friends are different. It's real important that you right now, especially if you're not involved in the actual killing, to be straight up and straight forward. If you aren't the person who pulled the trigger, you need to let me know. You don't want to throw your life away. * * * You need to think about what's going to happen to you from here on out. How's your mom going to be affected by all this?"

Steele's suggestion that child should be truthful if he (child) did not commit the actual killing did not constitute an express or implied promise of leniency, as child contends. Steele was merely encouraging child to be truthful and his statement cannot be read as offering any kind of lenient treatment in exchange for a confession. *See State v. Pollard*, 132 Or App 538, 888 P2d 1054, *rev den* 321 Or 138 (1995) (promises that suspect would receive treatment in lieu of prosecution rendered subsequent admissions involuntary); *State ex rel Juv.*

---

[4] During one break in the 90-minute interview, Steele took child to the hallway outside his office to get a soda.

*Dept. v. S.C.G.*, 77 Or App 543, 713 P2d 689 (1986) (juvenile's confession involuntary because it was induced by implied promises of leniency).

Having concluded that child's waiver of his constitutional rights was valid and his subsequent statements were made voluntarily, we address child's argument that questioning should have ceased when child's mother requested that child have an attorney.[5]

When a suspect requests counsel during interrogation, questioning must cease. *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966); *State v. Isom*, 306 Or 587, 761 P2d 524 (1988).[6] Child never asked to speak to an attorney during questioning, but he contends that the police should have honored his mother's statements that she wanted child to have an attorney and should have responded as if he had made the request himself. Child reasons that if the law permits parents to speak for their children in matters concerning education, discipline and health care, parents should similarly be able to invoke a child's right to counsel, even if the child has already waived that right. Child urges us to hold that a parent may invoke a child's right to counsel in order to "preserve and protect the role of parental authority against state interference." We decline to do so.[7]

Child provides no authority, and we are unaware of any, to support the proposition that the personal rights guaranteed by Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution may be effectively invoked (or waived) by anyone other than the individual holding those rights, even if that individual is a juvenile.

---

[5] Both the state and child agree that child's mother made a request for counsel during the course of child's interrogation. It is not certain whether child's mother requested counsel earlier, when police executed a search warrant at the house where child lived with mother. Because of our disposition of this issue, however, we need not decide the exact time at which the first request for counsel was made.

[6] A suspect's right to counsel during custodial interrogation is derived from state and federal constitutional provisions prohibiting compelled self-incrimination. Or Const, Art I, § 12; US Const, Amend V.

[7] Because child limits his argument to the sole issue of whether questioning should have ceased when his mother requested that he have counsel, we do not consider whether any measures short of terminating the interrogation might have been necessary.

Although Oregon law requires questioning to cease when an identified attorney requests to speak with a suspect who is engaged in custodial interrogation, the suspect remains free to continue the interrogation without consulting with or having the attorney present. *State v. Simonsen,* 319 Or 510, 878 P2d 409 (1994); *State v. Haynes,* 288 Or 59, 602 P2d 272 (1979), *cert den* 446 US 945 (1980) (suspect must be informed that attorney is present and must voluntarily and intelligently reject the opportunity to consult with the attorney before questioning can resume).[8] The attorney is said to have "invoked" the suspect's right to counsel; however, *the suspect* retains ultimate control over the decision whether to invoke or waive the right to counsel. *Simonsen* and *Haynes* do not stand for the proposition that a third party may invoke a suspect's right to counsel; those cases ensure that a suspect's decision to waive the right to counsel remains knowing, intelligent and voluntary, because the suspect must be continually apprised of information that is pertinent to the waiver decision. *Haynes,* 288 Or at 73-74. We agree with the state that those cases do not lend support to child's position that, under these facts, the right to counsel can be effectively invoked by a third party, such as a parent, so as to supersede a juvenile's own valid waiver of that right.

Affirmed.

---

[8] Since *Haynes* was decided, the Supreme Court has held that, under the Fifth Amendment to the United States Constitution, a suspect undergoing custodial interrogation need not be informed that an attorney has sought to communicate with him or her. *Moran v. Burbine,* 475 US 412, 421-22, 106 S Ct 1135, 89 L Ed 2d 410 (1986) (failure to convey such information to a suspect has "no bearing on the capacity to comprehend and knowingly relinquish a constitutional right").