### READ *against* CASE.

Although the general rule of law requires, that bail, before breaking the outer door of his principal, to arrest him, should signify the cause of his coming, and request admission ; yet if the personal safety of the bail, or his substitute, be in hazard, from the intended or threatened violence of the principal, he may proceed to break and enter, without this preliminary step.

If bail break and enter the house of his principal, for the purpose of arresting him, in a manner not authorized by law, the principal, in an action of trespass against the bail, will be restricted to the actual damage sustained.

This was an action of trespass, for breaking and entering the plaintiff's house, striking him, imprisoning him, &c.

The cause was tried at *Hartford, February* term, 1822, before *Peters,* J.

On the trial, the plaintiff adduced evidence to prove, and

claimed that he had proved, that on the day of the trespass complained of, he was in his own house, with his wife and children around him, his outer doors being closed; that the defendant came, and after assuring the plaintiff, upon his honour, that he had nothing against him, and would not let any one in, he was, by the plaintiff, admitted; that he went out, and was sundry times permitted to return, upon the same assurances; that in the evening, a rap being given at the door, the defendant instantly started, unbolted the door, with one hand, and reached a gun, with the other, with which he struck the plaintiff; that, at the same time, he let in a number of men, who seized the plaintiff, and dragged him away to prison, to the great terror of his family.

The defendant, on his part, claimed to have proved the following facts. On the 31st of *October*, 1820, the plaintiff was arrested on a writ against him and *Pliny Case*; and *Judah Case*, father of the defendant, and *Pliny Case*, gave bail for him. On the day of the alleged trespass, *J. O. Phelps*, a deputy-sheriff, proposed to the plaintiff to give himself up to his bail. The plaintiff told him, that he should not; that his house was his castle; that he had a gun, and should protect himself. Soon afterward, *Case*, the bail, applied to a magistrate for a *mittimus*, declaring on oath, that he verily believed his principal, the plaintiff, intended immediately to abscond. The magistrate accordingly granted a *mittimus* against the plaintiff, directed to *Phelps*; to whom it was given to serve. *Phelps* told the defendant, he wished him to get into the plaintiff's house, and secure the gun. *Phelps* then went, with a party of men, to the house, stationing themselves at the doors. He knocked at one door, and called "open the door," giving no notice of his object or business. The defendant, who was within, sprang instantly, and unbolted the door, seized a gun near it, and kept the door open, while *Phelps* and his party entered, arrested the plaintiff, and then made known the cause of his coming, by reading his *mittimus*. Under these circumstances, the defendant claimed, that he had a right to open the outer door of the plaintiff's house, and admit the officer and his men, without previously announcing the cause of his and their coming.

The judge charged the jury as follows: " By the common law, when a person is arrested, and let to bail, the bail becomes his keeper, and has a right to take and imprison him, at any time or place; and any resistance of the principal to

*Hartford,*
June,
1822.

Read
*v.*
Case.

the authority of his bail, is unlawful. But he must first know, that the bail is approaching to exercise his rights. A sheriff, or other officer, with a *mittimus*, issued at the instance of the bail, to arrest or imprison the principal, has the same rights as the bail, and may lawfully break open the doors of the principal, and arrest him, if refused admittance, on demand, and notice of his authority, and the occasion of his coming. But the house of a citizen is his castle; and he has a right to close his doors, and resist any unlawful attempt to enter it, by day or by night. If, then, you are satisfied, that the defendant entered the plaintiff's house, by fraud, and opened it, by force, and let in the deputy-sheriff, and assisted him in arresting and imprisoning the plaintiff, without first making known his authority, and the occasion of his coming, your verdict will be for the plaintiff to recover such damages as you think reasonable; otherwise, your verdict will be for the defendant."

The jury returned a verdict for the plaintiff; and the defendant, thereupon, moved for a new trial, on the ground of a misdirection.

*N. Smith* and *Phelps*, in support of the motion, contended, 1. That upon general principles, the bail has a right to enter the house of the principal, and take him, without making known his authority. This results from the nature of the relation subsisting between them. As against the bail, the principal has no castle. *Anon.* 6 *Mod.* 231. *Ex parte Gibbons,* 1 *Atk.* 238. *Sheers* v. *Brooks* & al. 2 *H. Bla.* 120. *Parker* v. *Bidwell,* & al. 3 *Conn. Rep.* 84. *Nicholls* v. *Ingersol,* 7 *Johns. Rep.* 145.

2. That if a notice of authority and a demand of admission were generally necessary, yet under the circumstances of this case, they were unnecessary. The principal had shut himself up in his house, and armed himself with a gun, to defeat the rights of the bail. He knew, that the bail was taking measures to assert his rights. Why should notice be given, when it could answer no purpose, but to enable him to make more effectual resistance? The judge, instead of laying down an universal proposition in his charge, ought to have submitted to the jury, whether the conduct of the defendant, under the circumstances of the case, was reasonable and proper. *Fisher* v. *Fallows,* 5 *Esp. Rep.* 172.

3. That the bail having peaceably entered the plaintiff's house, by his agent, the defendant, he had, at any rate, a right to open the door to obtain assistance.

4. That as the defendant, acting in behalf of the bail, had an unquestionable right to arrest and imprison the plaintiff, the damages ought to have been restricted to the breaking. Under the judge's charge, the jury were permitted to give damages for the arrest and imprisonment.

*T. S. Williams,* contra, contended, 1. That the bail himself could not break and enter the principal's house, without giving notice of the cause of his coming, and demanding admission. The right of bail to take his principal, is the same as the right of a man to take his property, *i. e.* wherever he can find it. But he cannot, for this purpose, violate domestic security. In *Semayne's* case, 5 *Co.* 92. it was resolved, that in all cases where the king is party, the sheriff may break the house of the adverse party, if he cannot otherwise enter, to arrest him, or to do other execution of the process; *but before he breaks it, he ought to signify the cause of his coming, and to make request to open the doors.* See also 2 *Hawk. P. C. lib.* 2. *c.* 14. *Hob.* 62. 264. If this is requisite in criminal process, *a fortiori* it must be as between principal and bail in a civil action.

2. That if the bail may exercise the power in question personally, yet when he resorts to process, he has only the power of an officer in executing criminal process. This *mittimus* was directed to *Phelps* as deputy-sheriff; and in that capacity he acted in serving it. The defendant acted as his assistant.

3. That this case was not to be delivered from the operation of the general rule, by reason of any peculiar circumstances attending it. In the first place, there is no authority for making an exception to the rule, in any case. But secondly, there are no circumstances, in this case, even as claimed by the defendant, which do not ordinarily exist, where there is occasion for breaking outer doors. Thirdly, the facts claimed by the defendant, may not have been found by the jury; and this may have been one reason of their giving a verdict for the plaintiff. The motion does not state these facts as found or admitted.

4. That if the breaking was unlawful, there could be no right to arrest or imprison. A man cannot take advantage of his own wrong.

5. That if the imprisonment was lawful, still it would not follow, that the jury might not give damages for the consequences of the breaking, one of which was the imprisonment.

HOSMER, Ch. J.    The right of the bail over his principal, whether exercised personally or by delegation, is too well established to require any observation.    I will barely remark, that the law supposes the principal to be always in the custody of his bail; and if he is not in fact, the bail may take him, when and where he pleases.    If the principal has withdrawn himself within his own house, and fastened his doors, the bail may break them open to arrest him, after having signified the cause of his coming, and requested the principal to open them. Although this is the general rule, and established on principles of wise policy, there are cases not within the reason of it, and which, manifestly, form a just and reasonable exception. The one displayed on the record, is clearly of this description.    The principal had resolved, if the defence made was true, in defiance of the obligations both of justice and honour, to rescue himself from the custody he had voluntarily assumed, and, with full knowledge of the purpose for which he was sought after, to resist even to the shedding of blood. Under these circumstances, he was not within the reason and spirit of the rule requiring notice; nor was the bail obliged by law to make a demand, that would probably issue in the destruction of his life.    I consider the defendant as an assistant to the bail, and justifiable on the same reason.

The jury should have been informed, that, if the personal safety of the bail, or his substitute, was in hazard, the proceeding to apprehend the plaintiff was lawful.    Imminent danger to human life, resulting from the threats and intended violence of the principal towards his bail, constitutes a case of high necessity; and it would be a palpable perversion of a sound rule to extend the benefit of it to a man, who had full knowledge of the information he insists should have been communicated; and who waited only for a demand, to wreak on his bail the most brutal and unhallowed vengeance.

If the forms of law had been violated, I could not subscribe to the direction given to the jury, in relation to damages. The plaintiff ought to have been limited to the actual damage sustained.    His imprisonment was lawful; for it was the condition, which, in contemplation of law, he had been subjected to, from the moment the bail was given; and of his damage the actual restraint of his person formed no part.

CHAPMAN, BRAINARD and BRISTOL, Js. were of the same opinion.

PETERS, J.   In trespass for breaking and entering the *Hartford,* June, 1822. plaintiff's house, assaulting and imprisoning his person, the defendant justified under the authority of a deputy-sheriff, who had a *mittimus,* issued pursuant to the late statute. (*a*) to Read *v.* Case. arrest and imprison the plaintiff, at the instance of his bail, and directed the defendant to enter the house, and arrest the plaintiff, without first making known his authority, and demanding entrance.

Admitting that the law supposes the principal to be in the custody of his bail; and that the bail may take him, when he pleases, and detain him, or surrender him; and that, in the language of the books, *he has him always on a string, which he may pull at pleasure,* and construing this language literally, may break into his bed-chamber, at mid-night, and drag him from his wife and children, (*b*) *without notice,* or necessity; the defendant is not justifiable.   Though the plaintiff may have been bound to submit to his bail, because he knew him, and had voluntarily committed himself to his custody; still he was not bound to submit to the agent of his bail, a mere stranger, nor even to the sheriff, and might lawfully resist him and his *posse comitatus,* until they made known their authority.   But the defendant was not the bail, nor the agent of the bail: he was the bailiff of the sheriff, who was the agent of the law, and not of the bail.   Was the plaintiff entitled to less civility, or had he fewer privileges, than a *felon,* under like circumstances?   "In all cases where the king is party, the sheriff may break the party's house to arrest him; but before he breaks it, he ought to signify the cause of his coming, and make request to open the doors;" and this he must do, " if the house be kept and defended with force; for perhaps he did not know of the process, of which if he had notice, it is to be presumed he would obey it."   *Semayne's* case, 5 *Co. Rep.* 91.

But the plaintiff said, "He had a gun, and would defend himself, and his castle."   He did not, however, say this to his bail, nor to the deputy-sheriff, *after* he received the *mittimus.* But if he had so threatened, the application of force was unnecessary: for the defendant had previously secured the gun; and "the law doth never allow of such extremities, but in cases of necessity; and, therefore, no one can justify the breaking open another's doors to make an arrest, unless he first sig-

(*a*) *Stat. tit.* 5 *s.* 8. *p.* 63, 4.   (*b*) See *Parker* v. *Bidwell,* 3 *Conn. Rep.* 84. *Anon.* 6 *Mod.* 231. *Nicolls* v. *Ingersoll,* 7 *Johns. Rep.* 145.

*Hartford,*
*June,*
*1822*

Read
*v.*
Case.

4 172
66 103

4 172
76 180
76 652

nify to those in the house the cause of his coming, and request them to give him admittance." 2 *Hawk. P. C. c.* 14. *s.* 1. I would not advise a new trial.

New trial to be granted.