STATE OF OREGON, *Respondent, v.*
ULYSSE HOLLMAN, *Appellant.*

446 P. 2d 117

*Gerald R. Pullen,* Portland, argued the cause and filed a brief for appellant.

*Jacob B. Tanzer,* Assistant Chief Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

The defendant appeals from his conviction of illegal possession of narcotics and the resulting penitentiary sentence.

Defendant was arrested without a warrant and contends that his arrest was illegal because (1) there was no probable cause for his arrest, and (2) no compliance with ORS 133.320, requiring notice of "office and purpose."

At about 11:00 p.m. on April 8, 1967, Officer Giani of the Portland Police Department received a telephone call from a known informer. The informer said that Tall Slim was in Room 34 on the second floor of the Tourist Hotel, and that he had in his possession a quantity of heroin which another person very shortly was coming by to pick up. The defendant was known to Officer Giani as Tall Slim, and also as Ulysse Hollman, or Ulysses S. Grant.

Officer Giani after conferring with his associates decided not to take time to get a warrant, but to proceed at once to the hotel. Giani and his partner, Officer Fletcher, arrived at the hotel within about seven minutes after the informant called. Giani went to the manager's apartment and looked at the register, which showed that Room 34 was occupied by U. Hollman.

Giani then went to Room 34, waited a moment in front of the door and knocked. He heard a male voice ask "Who is there?", heard some movement in the room, waited just a second or two and then broke in

the door. He and Officer Fletcher entered with guns drawn.

The officers found defendant lying on the bed fully clothed. Giani saw defendant take something from underneath his pillow and attempt to place it in his mouth. Giani rolled defendant's head over and took a blue balloon containing capsules from alongside defendant's head. Giani then placed defendant under arrest for illegal possession of narcotics, and advised him of his constitutional rights. There were two other persons in the room who were taken to the police station, but not arrested or charged with any crime. It was later established that the capsules in the balloon contained heroin.

The defendant filed a motion to suppress, which was heard prior to trial and denied. The only assignment of error is the denial of the motion to suppress.

■ We agree with the trial court that there was sufficient evidence of probable cause to arrest without a warrant. Concerning the reliability of the informer, Officer Giani testified as follows:

"Q Did you know the individual who was calling you?
"A Yes.

"Q Had he ever provided you with information in the past?
"A Yes.

"Q Did you ever have occasion to determine the reliability of information which he had given you in the past?
"A Yes.

"Q And on how many occasions had he given you information?
"A I would say over the period of the last three or four months, I would say seventeen to twenty times.

"Q And was this information pertaining to narcotics in some instances?

"A Yes.

"Q And the information which he had previously given to you on this seventeen or twenty times, had that information later turned out to be reliable?

"A Yes.

"Q Was there any instances when it did not turn out to be reliable?

"A No.

"Q Based on the information which you had previously received from this informant, had any arrests been made prior to this date, April 8th?

"A Yes.

"Q And had subsequent convictions resulted from these arrests?

"A Yes.

"Q Did the phone call relate to you anything more about the whereabouts of this heroin, other than Room 34 in the Tourist Hotel?

"A Yes, I was informed that the—that Mr. Hollman kept the narcotics in his bag.

"Q Did you receive any information as to where Room 34 was located within the hotel?

"A I inquired as to where Room 34 was, and the caller stated that it was on the second floor, at the end of the hall on the right.

"Q When you arrived at the hotel, is that where you later found Room 34 to be?

"A Yes."

We think the information furnished by the informant, together with the corroborating evidence obtained by Giani from the hotel register constituted probable cause for the arrest of defendant without a warrant. See *State v. Roderick,* 243 Or 105, 111, 412 P2d 17 (1966); *State v. Penney,* 242 Or 470, 410 P2d 226

(1966); *McCray v. Illinois,* 386 US 300, 87 S Ct 1056, 18 LEd2d 62 (1967), reh. den. 386 US 1042, 87 S Ct 1474, 18 LEd2d 616; *Draper v. United States,* 358 US 307, 79 S Ct 329, 3 LEd2d 327 (1959).

■ We decline to consider the alleged failure to comply with ORS 133.320,① because the question was not raised adequately, if at all, in the trial court. The motion to suppress read as follows:

"Comes now the Defendant, by and through his attorney, GERALD R. PULLEN, and respectfully moves the Court for an Order as follows:

"For an order suppressing as evidence in the forthcoming trial of the State of Oregon against this defendant, of certain personal property, to wit: A certain rubber balloon seized from defendant's person by Officer Giani, and the contents thereof.

"That said property was taken from the defendant illegally and without justification, without due process of law in that there was no search warrant, writ or order of the Court which granted any authority in any police enforcement agency to take said personal property, and that said property was taken from the defendant prior to any lawful arrest.

"That said seizure of the hereinabove described personal property is in violation of the defendant's constitutional rights as set forth under the Oregon Constitution Article 1, Section 9, as well as the U. S. Constitution, Amendment 14.

"In support of the foregoing motion, defendant will rely on the constitutional provisions above cited and the Oregon case of *State vs. Penney,* 242 Or 470.

"GERALD R. PULLEN
Attorney for Defendant"

---

① ORS 133.320 "To make an arrest [without a warrant], as provided in ORS 133.310, the officer may break open any door or window, as provided in ORS 133.290 and 133.300, if, after notice of his office and purpose, he is refused admittance."

The only ground stated in the motion was the lack of a warrant and we can not infer from the motion any intent to rely on a failure of the officers to comply with ORS 133.320.

At the hearing on the motion the defendant did not testify and made no effort to prove that ORS 133.320 had not been complied with. The record does not contain the arguments of counsel on the motion, but in ruling on the motion the court made no reference to any claim of a failure to give "notice of office and purpose."[2]

We are further persuaded by the fact that during the trial the defendant did not object to the introduction into evidence of the heroin capsules because of any alleged failure to comply with ORS 133.320. The only objection to the evidence was on the ground that there was no proof that the content of the capsules was heroin. This proof was later received.

We are mindful that during the hearing of the motion to suppress the state offered evidence from which a failure to comply with ORS 133.320 could be inferred.[3] However, since the defendant did not ask

---

[2] "THE COURT: Counsel, I have done a little bit of research and my clerk has done quite a bit of research on *the question of search and seizure which we had*. I went back through some material that was presented to the recent judicial conference we had down at Cottage Grove by the Dean of the University of California Law School at Davis, and looking at this and the material produced by my clerk, who spent a lot of time on it last night, I have concluded that while you may have a relatively close question here, the law does preponderate on this thing toward the side of society, and so I am going to deny the motion. You've got a pretty good question, though, there is no question about that." [Emphasis added]

[3] "BY MR. CAPLAN:

"Q Officer Giani, I am going to direct your attention to that point in time when you were in the hall outside of Room

the trial court to rule on that issue, there is no ruling for this court to review on appeal. *State v. Abel,* 241 Or 465, 467, 406 P2d 902 (1965); *State v. Avent,* 209 Or 181, 183, 302 P2d 549 (1956).

Affirmed.

34 in the Tourist Hotel. Could you relate to the Court what occurred at that point?

"A  We proceeded down the hall towards the—Room 34, and got in front of the door, waited a moment, knocked. I heard a male voice ask, 'Who is there?' and then some movement. I waited for just a second or two, and then forced the door.

"Q  You actually broke in the door or forced your way in?
"A  Yes.

"Q  You and Officer Fletcher?
"A  Yes.

"Q  And this is the point where you had your guns drawn and entered the room; is that correct?
"A  Yes.

"MR. CAPLAN: That's all I have."