Argued and submitted June 6, the decision of the Court of Appeals reversed and the judgment of the circuit court affirmed November 26, 1990

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## CHARLES TIMOTHY FORD,
*Respondent on Review.*

### (TC 10-87-01668; CA A45907; SC S36906)

801 P2d 754

Rives Kistler, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General and Virginia L. Linder, Solicitor General, Salem.

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for respondent on review. With him on the response was Sally L. Avera, Public Defender, Salem.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley and Unis, Justices.

VAN HOOMISSEN, J.

Carson, J., specially concurred and filed an opinion.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for unlawful possession of a controlled substance. ORS 475.992. He contends that the trial court erred in refusing to suppress evidence obtained by police officers after a search allegedly conducted in violation of the "knock and announce" rule, ORS 133.235(6),[1] and of Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution. The Court of Appeals found an "aggravated" statutory violation requiring suppression, and ordered a new trial.[2] *State v. Ford,* 99 Or App 1, 780 P2d 1192 (1989). Assuming that the officers did not comply with the requirements of ORS 133.235(6), we hold that their noncompliance was excused. We further hold that the officers did not violate either the Oregon or the federal constitution. Accordingly, we reverse the Court of Appeals' decision and affirm the circuit court's judgment.

## FACTS

Eugene police officer Nauta stopped a car for a traffic violation. He asked the driver and the passenger for their names and addresses. The driver stated that her name was Amy Jones and that she and her passenger lived at 975 West 5th Avenue, Apartment 3, in Eugene. The passenger, who identified himself as Douglas Ford, confirmed that he lived at that address and stated that he just had been released on temporary leave from the Oregon State Penitentiary. A radio check of the name Douglas Ford revealed that Jones' passenger generally matched the description of a person bearing

---

[1] ORS 133.235, relating to arrest by a peace officer, provides in part:

"(5) In order to make an arrest, a peace officer may enter premises in which the officer has probable cause to believe the person to be arrested to be present.

"(6) If after giving notice of the officer's identity, authority and purpose, the officer is not admitted, the officer may enter the premises, by a breaking, if necessary."

ORS 133.575(2) makes the knock and announce rule applicable to search warrants:

"The executing officer shall, before entering the premises, give appropriate notice of the identity, authority and purpose of the officer to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be."

[2] Given its conclusion that the statutory violation was "aggravated," the Court of Appeals' majority did not reach defendant's state or federal constitutional claims.

that name. Nauta saw a blue backpack on the back seat of the car. Ford appeared quite nervous and agitated and Nauta suspected that he might be using methamphetamine.[3] Nauta then asked Jones if Ford "might be armed with a gun." Jones answered that she did not know whether Ford had a gun. Nauta became concerned for his safety and called for police "backup." Nauta then searched the glove box and under the front seat of Jones' car for weapons. Finding none, Nauta issued Jones several traffic citations and then permitted her and Ford to leave the area.

The next day, an anonymous informant told the Eugene police that Charles Ford was currently at 975 West 5th Avenue, Apartment 3, in Eugene, where Ford and Amy Jones resided; that Ford had five concealable firearms in his possession, two of which he carried on his person and three of which were in a blue backpack that Ford kept with him at all times; that Ford was in possession of methamphetamine; and that Ford had a substantial quantity of jewelry, believed to be stolen, in his backpack. The informant's information was based on personal observation. Some of the information was corroborated by Nauta's earlier encounter with defendant and Jones.

Nauta recognized the name Amy Jones and the address given by the informant and, remembering that Jones had had a passenger with her the day before who had identified himself as Douglas Ford, Nauta compared police photos of Charles Ford with those of Douglas Ford. Nauta realized that Jones' passenger the day before in fact had been defendant Charles Ford, a convicted felon[4] with outstanding arrest warrants for failure to appear on felony driving while suspended and misdemeanor criminal trespass I charges.[5] Another officer then told Nauta that about three weeks earlier the owner of a second-hand store had told him that Charles Ford recently

---

[3] Nauta testified at the suppression hearing that he had been employed as a Eugene police officer for thirteen years, that he held basic and advanced certificates from the Drug Enforcement Administration, that he had worked in narcotics enforcement for about four-and-one-half years, and that it is not difficult to tell when someone is using methamphetamine.

[4] Defendant was convicted in 1986 of a felony controlled substance offense, ORS 475.992, and was placed on 5 years probation.

[5] Failure to appear on a felony charge is, itself, a felony. ORS 162.205. Failure to appear on a misdemeanor charge is a Class A misdemeanor. ORS 162.195.

sold the owner a concealable firearm, and that at the time Ford had another concealable firearm in his possession.

The officers commenced the process to obtain a warrant to search Apartment 3 to arrest defendant on the outstanding arrest warrants and to seize any concealable firearms in his possession. Meanwhile, two officers drove to the neighborhood to observe the apartment. While the officers were in the apartment's parking lot, they saw a man step onto the balcony of Apartment 3 and watch them until they walked out of sight. Another officer observing Apartment 3 saw a man being admitted into the apartment by someone inside. Neither of the men seen by the officers was defendant. Jones' car, in which Nauta had seen defendant and Jones the day before, was parked directly below the apartment in a stall designated for Apartment 3.

The officers obtained a search warrant to search Apartment 3 to arrest defendant on the outstanding arrest warrants and to seize any concealable firearms in his possession.[6] The search warrant was executed by a six-to-eight officer "tactical team" wearing face masks and camouflage military fatigue uniforms with placards on the front bearing the word "POLICE" in large letters. After one officer opened the screen door, another officer struck the apartment door with a battering-ram; while a third officer shouted, "Police officers with a search warrant." It took about three hits with the battering-ram for the door to break open. When it did, the officers entered the apartment and immediately arrested defendant. Everyone in the apartment was in custody within 20-30 seconds.

The officers found a handgun in a blue backpack similar to the backpack Nauta had seen on the back seat of Jones' car the day before. They also saw a syringe loaded with methamphetamine and some drug paraphernalia in plain view on a coffee table. After defendant arrived at the police station,

---

[6] The state concedes that the search warrant was defective on its face, because it failed to describe with particularity the place to be searched. Defendant does not argue, however, that the evidence should be suppressed because the search warrant was defective. His only contention is that the evidence was obtained during an improper execution of the arrest warrants. This case does not present the issue of whether police are authorized to enter a residence without a search warrant on the authority of an arrest warrant only. *See State v. Jordan,* 288 Or 391, 605 P2d 646, *cert den* 449 US 846, 101 S Ct 132, 66 L Ed 2d 56 (1980).

the officers searched his coat and found a cigarette package containing methamphetamine. When the officers reopened the backpack at the police station they discovered a second handgun and ammunition for both guns. While in police custody, defendant made incriminating statements to the police. Defendant subsequently was charged with unlawful possession of a controlled substance and unlawful possession of a concealable firearm. The unlawful possession of a firearm charge later was dismissed on the state's motion.

At trial, defendant moved to suppress all the evidence seized by the officers at the time of his arrest, arguing that it was seized during a search allegedly conducted in violation of the knock and announce rule, ORS 133.235(6), *supra* n 1, and of Article I, section 9, of the Oregon Constitution, *infra* n 23, and the Fourth Amendment to the United States Constitution, *infra* n 24. He also moved to suppress the methamphetamine found in his coat and the second handgun found in his backpack at the police station and the statements he made to the officers after his arrest, arguing that they were derivative of those violations. Without making any express findings of fact, the trial court ordered suppression as to defendant's backpack and its contents, but denied suppression of the methamphetamine found in his coat at the police station and his statements to the officers.[7]

A jury convicted defendant of unlawful possession of a controlled substance. He appealed to the Court of Appeals, arguing that the trial court had erred in denying his motion to suppress the methamphetamine and his statements to the officers. As noted, the unlawful possession of a firearm charge was dismissed and the trial court's suppression of the backpack and its contents was not in issue on appeal.

A majority of the Court of Appeals, sitting *in banc,* concluded that the officers had violated the knock and announce requirements of ORS 133.235(6) and that the violation was "aggravated," requiring suppression of the evidence

---

[7] We do not know the factual or legal basis for the court's ruling. Once again, *see State v. Magee*, 304 Or 261, 263 n 1, 744 P2d 250 (1987), we stress the importance of trial courts making factual findings on the record to assist appellate courts in reviewing these issues.

and a new trial.[8] The Court of Appeals majority dismissed the officers' articulated apprehension of peril as follows:

"[T]here is no suggestion [in this case] that the police thought that they were about to execute a warrant for a major drug ring or that the occupants were dangerous. [The officers] did have reason to believe that defendant carried one or more pistols, but they also knew that the warrants for his arrest related to non-violent offenses and that he had no history of violence." 99 Or App at 7.

Judge Deits, joined by Judges Richardson and Rossman, dissented. Finding a statutory violation, the dissenters concluded that the facts did not show an "aggravated" violation. Writing for the dissenters, Judge Deits explained:

"I am unaware of any requirement that the warrant must relate to a major drug ring before a violation of the knock and announce statute will be excused. The statement that there was no suggestion that the occupants were dangerous ignores reality. The officers expressed concerns for their safety, and those concerns were supported by objective facts.

"* * * It is preposterous to hold that an officer cannot act consistent with legitimately held safety concerns when executing a warrant on a suspected drug user believed to be in possession of drugs, stolen property and weapons, unless the officer has knowledge that the person has used the weapons in a violent manner or has a history of violence." 99 Or App at 10-11. (Footnote omitted.)

---

[8] The Court of Appeals majority stated:

"The violation [of the knock and announce statute] requires suppression of evidence obtained as a result of the unlawful entry if (1) it is aggravated or (2) it also constitutes a constitutional violation. *State v. Bishop,* 288 Or 349, 352, 605 P2d 642 (1980)." 99 Or App at 4-5.

In *Bishop,* this court noted that ORS 133.235(5) and (6) say "nothing concerning the consequences of this or any kind of violation * * * [of the statute]." 288 Or at 352. We repeatedly have stated that a statutory violation does not *per se* require exclusion of evidence obtained as a result of that violation. *State v. Davis,* 295 Or 227, 235-37, 666 P2d 802 (1983); *see State v. Brock,* 294 Or 15, 21-22, 653 P2d 543 (1982) (violation of ORS 133.565(3) does not require suppression of seized evidence); *State v. Valentine/ Darroch,* 264 Or 54, 68, 504 P2d 84 (1972), *cert den* 412 US 948, 93 S Ct 3001, 37 L Ed 2d 1000 (1973) (violation of *former* ORS 133.290, the predecessor codification of ORS 133.235(6), does not mandate suppression); *State v. Cortman,* 251 Or 566, 571, 446 P2d 681 (1968), *cert den* 394 US 951, 89 S Ct 1294, 22 L Ed 2d 487 (1969) (no automatic exclusion for purely statutory violation); *State v. Shipley,* 232 Or 354, 360-62, 375 P2d 237 (1962), *cert den* 371 US 811, 83 S Ct 1701, 10 L Ed 2d 1034, *reh'g den* 375 US 872, 84 S Ct 32, 11 L Ed 2d 102 (1963) (confession obtained as a result of statutory violation was admissible).

The dissenters would have affirmed defendant's conviction.

On review, the state contends that the Court of Appeals erred in reversing the trial court, arguing that the officers had an apprehension of peril at the time they entered the apartment which excused their unannounced entry.[9] In the alternative, the state argues that, *even if* the entry violated ORS 133.235, the evidence seized should not be excluded because the police inevitably would have discovered it if they had complied with that statute.[10] Because we conclude that compliance with the statute was excused because of the officers' apprehension of peril, we do not reach the state's inevitable discovery argument.

ORS 133.235(6), *supra* n 1, requires a peace officer seeking to execute an arrest warrant inside premises to notify the occupants of the premises of the officer's "identity, authority and purpose."[11] This "knock and announce" rule finds it roots in the common law.[12] *Sabbath v. U.S.,* 391 US 585, 589, 88 S Ct 1755, 20 L Ed 2d 828 (1968); *Ker v. California,* 374 US 23, 40, 83 S Ct 1623, 10 L Ed 2d 726 (1963); *Miller v. United States,* 375 US 301, 313, 78 S Ct 1190, 2 L Ed 2d 1332 (1958); *State v. Bishop,* 288 Or 349, 353, 605 P2d 642 (1980); *State v. Valentine/Darroch,* 264 Or 54, 58, 504 P2d 84 (1972), *cert den* 412 US 948, 93 S Ct 3001, 371 L Ed 2d 1000 (1973); *People v. Maddox,* 46 Cal 2d 301, 294 P2d 6, *cert den* 352 US 858, 77 S Ct 81, 1 L Ed 2d 65 (1956); *see* Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California,* 112 U Pa L Rev 499, 500 (1964); Note,

---

[9] The state does not argue that the officers complied with the notice requirements of ORS 133.235(6).

[10] *State v. Miller,* 300 Or 203, 225-27, 709 P2d 225 (1985), *cert den* 475 US 1141, 106 S Ct 1793, 90 L Ed 2d 339 (1986); *Murray v. United States,* 487 US 533, 108 S Ct 2529, 101 L Ed 2d 472 (1988); *Nix v. Williams,* 467 US 431, 104 S Ct 2501, 81 L Ed 2d 377 (1984).

[11] Cases involving the execution of both arrest and search warrants interchangeably comprise the body of the law on the subject. *See generally* 2 LaFave, Search and Seizure (1987), § 4.8(a), 217.

[12] The rule is traced to *dictum* in *Semayne's Case,* 77 Eng Rep 194, 195 (KB 1603):

"As early as Semayne's Case, * * * it was declared that '[i]n all cases when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. *But before he breaks it, it ought to signify the cause of his coming, and to make request to open doors* * * * (Emphasis supplied.)." *Ker v. California,* 374 US 23, 47, 83 S Ct 1623, 10 L Ed 2d 726 (1963) (Brennan, J., dissenting).

*Announcement in Police Entries,* 80 Yale LJ 139-48 (1979).[13] ORS 133.235(5) and (6) are not markedly different in substance from the rule as it appeared in the 1854 Deady Code.[14]

Various reasons have been given for the "knock and announce" rule. In *State v. Bishop, supra,* 288 Or at 353, we stated that at common law a reason for the rule was "to prevent the [needless] destruction of [the homeowner's] property" — an act with potentially devastating human consequences in a pre-industrial society. *See Lee v. Gansel,* 98 Eng Rep 935, 938 (KB 1774) (a contrary rule would leave the family within naked and exposed to thieves and robbers).

Another reason given for the rule is to protect persons who might be injured by violent resistance to unannounced entries by law enforcement officers. *State v. Valentine/Darroch, supra,* 264 Or at 60. In that context, "persons" means those inside and outside the premises, including officers involved in the entry. *See State v. Davis,* 295 Or 227, 236, 666 P2d 802 (1983) (purpose of the rule is the safety of officers and others on the scene against violent consequences of a sudden, unexplained break-in); *see also Miller v. United States, supra,* 357 US at 313 n 12 (compliance is a safeguard for the police). In *State v. Cortman,* 251 Or 566, 570, 446 P2d 681 (1968), *cert den* 394 US 951, 89 S Ct 1294, 22 L Ed 2d 487 (1969), this court stated:

> "The purpose of [knock and announce] statutes is to forbid the unannounced intrusion into a dwelling. The reasons underlying the statutes are grounded in practical experience: a police officer entering a house must guard against the possibility that he might be mistaken for someone with no right to be there."

A third reason given for the rule is to protect a homeowners' right to privacy. *State v. Valentine/Darroch, supra,*

---

[13] Some courts have held that announcement is not required when the officer justifiably believes that the subject knows of the officer's presence and purpose so that an announcement would be a "useless gesture." *See Miller v. United States,* 375 US 301, 310, 78 S Ct 1190, 2 L Ed 2d 1332 (1958) (*dictum*); *United States v. Tracy,* 835 F2d 1267 (8th Cir), *cert den* 486 US 1014, 108 S Ct 1750, 100 L Ed 2d 212 (1988); *see also Ker v. California, supra,* 374 US at 40 (defendant's "furtive" conduct was ground for belief that he might have been expecting the police).

[14] The 1854 Deady Code provided:

> "The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant, if after notice of his authority and purpose, he be refused admittance."

264 Or at 60. However, in *Valentine/Darroch* we recognized that, with some justification, this reason has been criticized:

"It must be remembered that the police officers have the right to enter after they announce their presence and purpose and, if entry is denied, they have the right to force entry. The only right of privacy protected by the announcement requirement is the right to know who is entering, why he is entering, and a few seconds to prepare for his entry." 264 Or at 60.

In *State v. Bishop, supra,* 288 Or at 355, we stated:

"The right of the occupants of the premises which is protected by the rule is really their right to be warned that their privacy is about to be legally invaded. Even the dissenter in *Valentine/Darroch,* [Chief] Justice O'Connell, who believed that the basis of the rule was privacy, had difficulty 'in seeing the knock and announce rule as having constitutional proportions, * * *.' 264 Or at 69."

More recently, in *State v. Davis, supra,* 295 Or 227, 236, 666 P2d 802 (1983) we stated:

"The purpose of the 'knock and announce' rule * * * is not to protect the privacy and the freedom of those within against an entry and arrest or search which the officers in fact were legally authorized to make."

At common law, noncompliance with the knock and announce rule was excused if the officer's peril would have been increased had the officer given notice. *Sabbath v. United States, supra,* 391 US at 591 n 8; *Ker v. California, supra,* 374 US at 40 (citing *Read v. Case,* 4 Conn 166, 170, 10 Am Dec 110 (1822), *People v. Maddox, supra,* and Restatement, Torts (1934), § 206 comment d);[15] *People v. Dumas,* 9 Cal 3d 871, 109

---

[15] Restatement, Torts (1934), § 206, comment d, states:

"Since under ordinary circumstances it is reasonable to give the possessor an opportunity to permit the actor to enter peaceably and thus avoid the danger of harm to the premises and the risk of the actor's use of force to the person, it is usually a prerequisite to the privilege to make a forcible entry into a dwelling that the actor shall first explain his errand and make demand upon the possessor to permit him to enter and make the arrest or other apprehension. Upon refusal of such demand, or if no refusal be made by word or act, upon the expiration of a reasonable time, the privilege to effectuate a forcible entry arises. Such reasonable time would ordinarily be very brief.

"If for any reason an explanation of his errand and demand for admittance by the actor are or reasonably appear to him to be impracticable, *as where such explanation and demand would tend to frustrate or to make much more dangerous to life or limb the arrest or other apprehension,* the above requirements may be dispensed with." (Emphasis added.)

Cal Rptr 304, 512 P2d 1208 (1973); *see* Cook, *Constitutional Rights of the Accused* (2d ed 1985), § 2.21, at 156-61; LaFave and Israel, *Criminal Procedure* (1984), § 3.6(b), at 263-64; *Wharton's Criminal Procedure* (13th ed 1989), § 77, at 338-39.[16] Several states recognize an apprehension of peril exception to their knock and announce rules by statute. In most states, however, the exception is recognized by case law. We are not aware of any state which, by statute or case law, has rejected an exception to its knock and announce rule based upon an officer's apprehension of peril.

ORS 133.235 itself does not contain an apprehension of peril exception to its knock and announce requirements. The question therefore is: When the 1973 legislature enacted ORS 133.235, did it intend to recognize an apprehension of peril exception to that statute's knock and announce requirements? For the reasons stated below, we hold that it did.[17]

This court has never before specifically held that noncompliance with the knock and announce statute may be excused because of an officer's apprehension of peril.[18] In *State v. Hollman*, 251 Or 416, 446 P2d 117 (1968), and again in *State v. Johnson*, 253 Or 416, 454 P2d 852 (1969), this court refused to rule on the question because it had not been preserved in the trial courts. In *State v. Cortman, supra,* after the officers made the required announcement they heard "scurrying about inside the room." After knocking again and receiving no response, they "pushed the door in." This court stated

---

[16] ORS 133.140(7) provides that an *arrest* warrant shall

"Specify that the arresting officer may enter premises, in which the officer has probable cause to believe the person to be arrested to be present, without giving notice of the officer's authority and purpose, *if the issuing judge has approved a request for such special authorization;* * * *." (Emphasis added.)

No similar authority for a "no-knock" search warrant is explicitly found in ORS 133.575. Defendant does not argue that the officers should have applied for a "no-knock" endorsement on the arrest warrants.

[17] Defendant does not argue that the legislature did not intend to recognize an apprehension of peril exception. We understand defendant's argument to be that the evidence in the record does not show that compliance with the statute would have endangered the officers' safety, and that the method and manner of their entry constituted an "aggravated" violation of the ORS 133.235(6) notice requirements.

[18] *Read v. Case,* 4 Conn 166, 10 Am Dec 110 (1822), relied on by the plurality in *Ker v. California, supra,* provides an explanation of the principles behind the apprehension of peril exception. In *People v. Maddox,* 46 Cal 2d 301, 294 P2d 6, 9-10, *cert den* 352 US 858, 77 S Ct 81, 1 L Ed 2d 65 (1956), the California Supreme Court also cited *Read* with approval.

that after making the required announcement, "[t]he reasonableness of the officer's delay [in entering a premise] in a given set of circumstances will depend upon a number of factors, including the \* \* \* danger to the officers, \* \* \*." 251 Or at 570-71. Chief Justice O'Connell, dissenting in *State v. Valentine/Darroch, supra,* 264 Or at 69, thought that, "In circumstances where the officer's safety would be endangered by an announcement of his purpose, he should be permitted to enter without making it." Justice McAllister joined in that opinion.

The Court of Appeals long has recognized an apprehension of peril exception to Oregon's statutory knock and announce rule.[19] In *State v. Steffes,* 2 Or App 163, 465 P2d 905, *rev den* (1970), the Court of Appeals, after citing *People v. Maddox, supra,* with approval,[20] and *Ker v. California, supra,* held:

> "[T]he police knew that the defendant had just been released from the penitentiary and that the hotel clerks who were robbed and stated that the robber used a gun in each case. *Thus they had reasonable grounds to believe that tarrying in the hall outside the defendant's door might expose them to danger.* In determining the lawfulness of the entry and the

---

[19] Some of the many Court of Appeals' decisions that recognize the apprehension of peril exception are: *State v. Stalbert,* 99 Or App 582, 586, 783 P2d 1005 (1989); *State v. Berardinelli,* 95 Or App 364, 368, 769 P2d 235, *rev den* 308 Or 79 (1989); *State v. Arce,* 83 Or App 185, 189-90, 730 P2d 1260 (1986), *rev den* 303 Or 332 (1987); *State ex rel Juv. Dept. v. Qutub,* 75 Or App 298, 303, 706 P2d 962, *rev den* 300 Or 332 (1985); *State v. Miller,* 43 Or App 421, 425, 602 P2d 1141 (1979); *State v. Newman,* 12 Or App 266, 270, 506 P2d 523 (1973); *State v. Larkins,* 8 Or App 162, 164, 493 P2d 172 (1972); *State v. Vance,* 7 Or App 566, 492 P2d 493 (1972); *State v. Mitchell,* 6 Or App 378, 384, 487 P2d 1156, *rev den* (1971); *State v. Spicer,* 3 Or App 120, 127, 473 P2d 147 (1970); *State v. Steffes,* 2 Or App 163, 168-69, 465 P2d 905, *rev den* (1970).

[20] In *Maddox,* Justice Traynor articulated the basis for the exigent circumstances exception to the California knock and announce statute (section 844):

> "It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. \* \* \* *Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased* or the arrest frustrated had he demanded entrance and stated his purpose. *Read v. Case,* 4 Conn 166, 170; *see* Restatement, Torts, § 206, comment d. Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance." (Quoted with approval in *Ker v. California, supra,* 374 US at 39-40.) (Emphasis added.)

existence of probable cause, the court should concern itself only with what the officers reasonably believed at the time of their entry. There were exigent circumstances in this case which justified the officers in entering Staffes' room without first announcing their purpose." 2 Or App at 169. (Emphasis added.)

In *State v. Spicer,* 3 Or App 120, 473 P2d 147 (1970), the Court of Appeals affirmed the trial court's finding that the officers had complied with the statutory notice requirement. The court commented:

"We think furthermore that the ease of destruction of narcotics and the likelihood that one trafficking illegally therein would seek to do so, *not to mention the possible danger to officers,* were indeed exigent circumstances." 3 Or App at 127. (Emphasis added.)

In *State v. Mitchell,* 6 Or App 378, 379, 487 P2d 1156, *rev den* (1971), the Court of Appeals explicitly recognized the apprehension of peril exception to Oregon's knock and announce rule. Chief Judge Schwab explained that our knock and announce statute "is typical of similar statutes in other states which also, as is the case in Oregon, do not ordinarily contain any statutory exceptions" and that an apprehension of peril exception "[has] been judicially carved out of the body of such statutes." 6 Or App at 381.

"Traditionally, forcible entry has been allowed where 'exigent circumstances' exist to justify the exception. * * * *Therefore, where notice would imperil the officer,* * * * the requirement is dispensed with.

"* * * * *

"The officers' on-the-spot decision is of necessity a hasty judgment based upon the facts - or reasonably founded suspicion - of the moment. Severe judicial second-guessing is therefore inappropriate. The officer must be given a degree of latitude for good faith judgment *as to his own possible peril, e.g., Gilbert v. United States,* 366 F2d 923 (9th Cir 1966), or as to the possibility for destruction of the evidence, fruits or instrumentalities of crime for which he is obliged to search. If the decision is reasonable under the 'exigent circumstances,' the entry is valid.

"* * * * *

"In *State v. Steffes, supra,* we cited [*People v. Maddox, supra,*] with approval and described its holding for excused

compliance with 'knock and announce' when (1) the police possess information which would lead them to reasonably believe the evidence would be destroyed, or (2) reasonably believe a culprit might escape, *or (3) reasonably believe the police might face increased peril.*

"What constitutes 'exigent circumstances' is discussed in more detail, and we think well stated, in *State v. Clarke et al,* Case No 70-382 (DCA, Fla, filed July 1970). These, stated in substance, are:

"(1) Where the person within already knows of the officer's authority and purpose; (2) where the officer is justified in the belief that the persons within are in imminent peril of bodily harm; *(3) where the officer's peril would have been increased had he demanded entrance and stated the purpose;* (4) where those within, made aware of the presence of someone outside, are engaged in activities which justify the officer in the belief that an escape or destruction of evidence is being attempted; or (5) where evidence would be destroyed if the officer announced his presence." 6 Or App at 384-87. (Emphasis added.)

In *State v. Vance,* 7 Or App 566, 569, 492 P2d 493 (1972), the Court of Appeals, citing *State v. Mitchell, supra,* held:

"[*T*]*he officers had good reason to believe that delaying their entry would increase their peril* because of the above mentioned handgun. [T]his is sufficient to require reversal, * * *.

"* * * * *

"The actions of the person who observed the officers approaching the door, coupled with the information which the officers had that the subject of the search warrant was armed, provided exigent circumstances excusing the officers' noncompliance with ORS 133.290 [the predecessor codification of ORS 133.235]." (Emphasis added.)

■   The legislative history of ORS 133.235 makes it clear, beyond peradventure, that in enacting that statute the legislature intended to preserve the Court of Appeals' interpretations of earlier versions of this state's statutory knock and announce rule and, specifically, the interpretations recognizing an apprehension of peril exception found in *State v. Vance, supra; State v. Mitchell, supra;* and *State v. Steffes, supra. See* Minutes: Senate Committee on Judiciary, Conference Committee on SB 80, June 23, 1973; Commentary to Criminal Law

Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report (November 1972), § 106, at 59-60.[21] Accordingly, we hold that compliance with the "knock and announce" requirements of ORS 133.235(6) is excused if specific and articulable facts known at the time of entry, taken together with rational inferences that may be drawn from those facts, would lead a reasonable person to believe that compliance would create a risk to the entering officers' safety.

■ The determination of the reasonableness of an

---

[21] As originally proposed by the Criminal Law Revision Commission to the 1973 Legislature, SB 80 contained the following language:

"(7) If the arresting officer reasonably believes that the notice required by subsection (6) of this section would * * * *increase the peril to the safety of the officer* or another person, the officer may enter the premises without prior notice." (Emphasis added.)

At a June 23, 1973, meeting of the conference committee on SB 80, Representative Hampton asked Commission Director Donald Paillette, whether the Commission intended that the existing body of Court of Appeals' case law should be applied to the newly restated knock and announce requirements of SB 80. Paillette responded that the Commission's Commentary to the Proposed Oregon Criminal Procedure Code, Final Draft and Report (November 1972), § 106, at 60, made this abundantly clear. The relevant commentary states:

"Subsection (7) permits three 'no-knock' exceptions, as does NYCPL §§ 120.80-120.84. These same provisions are contained in § 136 relating to execution of search warrants. The constitutionality of such provisions is upheld in *Ker v. California*, 374 US 23 (1963), and had been approved by the Oregon Court of Appeals. *State v. Mitchell*, * * * [6] Or App [378], 487 P2d 1156 (1971), *State v. Steeves* [sic], 2 Or App 163, 465 P2d 905 (1970) and *State v. Vance*, * * * [7] Or App [566], [492] P2d [493] (1972)."

The colloquy that followed between Hampton, Senator Eivers and Paillette leaves no doubt that, insofar as an apprehension of peril exception to the knock and announce rule was concerned, the new statute was intended to preserve relevant existing Court of Appeals' case law.

Thereafter, on June 27, 1973, the conference committee amended SB 80 to delete any *express* exceptions to the measure's knock and announce requirements.

This court has often recognized common law exceptions to a statutory rule even though such exceptions do not appear expressly in the statute. Those decisions have been justified under the general rule that, as in this case, statutes codifying the common law are to be construed in a manner consistent with the common law, absent clear legislative intent to the contrary. *E.g., Hatley v. Stafford*, 284 Or 523, 526 n 1, 588 P2d 603 (1978); *Rogers v. Donovan*, 268 Or 24, 26-27, 518 P2d 1306 (1974). Further, this court has held that when a statute has been construed by the court of last resort of the state and is later reenacted, it is deemed that the legislature has adopted the court's construction unless the contrary purpose is clearly shown. *Overland et al. v. Jackson et al.*, 128 Or 455, 463-65, 275 P2d 21 (1929). Although we recognize that, in this state, the Court of Appeals is not the court of last resort, we know, as a matter of legislative history, that the legislature was aware of the cited Court of Appeals' interpretations. Therefore, the rule of construction applies and it is deemed that the legislature has adopted the Court of Appeals' construction.

officer's apprehension of peril is an objective one based upon the totality of the circumstances present at the time of the officer's unannounced entry. *See Ker v. California, supra,* 374 US at 40 n 12 (in determining the lawfulness of the entry, we concern ourselves only with what the officers had reason to believe at the time of their entry). No single factor need be present to prove that a claimed apprehension of peril was reasonable, but a single factor, or a combination of factors, may be sufficient. An officer's claimed need to omit notice must be evaluated on a case-by-case basis. The burden to prove, by a preponderance of the evidence, justification for departing from the notice requirements of the statute is on the state. What actually transpired is a question of fact for the finder of fact. If the evidence sustains such historical factual findings, they will not be disturbed on appeal. If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion made by the finder of fact. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

## ANALYSIS

We proceed to consider whether the record in this case supports the state's claim that the officers' apprehension of peril excused their failure to comply with the knock and announce rule.

At the time of their forced entry, the officers knew or had reason to believe: (1) that defendant, a convicted felon prohibited by law from possessing a concealable firearm, had five concealable firearms in his possession, two of which he carried on his person and three of which he kept nearby; (2) that three weeks earlier defendant had been in possession of two concealable firearms; (3) that defendant, a convicted drug offender suspected of using methamphetamine one-day earlier, was in possession of methamphetamine; (4) that defendant was in possession of a large quantity of stolen jewelry; (5) that there were two outstanding warrants for defendant's arrest, one of which was a felony warrant; (6) that one day earlier, defendant had given officer Nauta a false name; (7) that defendant was inside the apartment being entered; (8) that in addition to defendant, there were several other people in the apartment; (9) that a man standing on the balcony of

the apartment had observed the officers shortly before their entry and, thus, defendant might have been expecting them; and (10) that defendant had an extensive criminal history involving a felony conviction for possession of a controlled substance; and misdemeanor convictions for reckless driving, driving while suspended, eluding a police officer, theft (shoplifting), and criminal mischief. The officers also knew that defendant had been arrested for, or charged with, harassment, disorderly conduct, violation of a restraining order, assault, recklessly endangering another person, menacing, and contempt.[22]

Viewing the totality of the circumstances present at the time of the officers' unannounced entry in this case, we conclude that specific and articulable facts known at the time of entry, taken together with rational inferences that may be drawn from those facts, would lead a reasonable person to believe that compliance with the knock and announce requirements of ORS 133.235(6) would create a risk to the entering officers' safety. Defendant's illegal possession of several handguns carried on or about his person, coupled with evidence of his known history of drug abuse and of illegal drug activity on the premises to be entered, were highly specific indicators of an appreciable risk of danger to the officers. Those factors alone satisfy us that the officers' unannounced entry was lawful.

## CONSTITUTIONAL ANALYSIS

Defendant argues that in failing to knock and announce before entering the apartment, the officer violated defendant's rights under Article I, section 9, of the Oregon Constitution.[23] We disagree. In *State v. Valentine/Darroch,*

---

[22] Defendant argues in his brief that his extensive criminal history "only serves to substantiate * * * that [he] has not proven assaultive toward police, despite [his] numerous arrests for essentially petty offenses." While it is true that defendant has never been convicted of assaulting a police officer, his extensive criminal history contains substantial evidence of his potentially violent character.

[23] Article I, section 9, of the Oregon Constitution, provides in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; * * *."

*supra,* this court held that the failure to meet the knock and announce requirement does not violate Article I, section 9, of the Oregon Constitution:

> "We are of the opinion that an otherwise lawful search and seizure accomplished by an entry which was made without an announcement of presence and purpose is not an unreasonable search and seizure within the meaning of the Oregon Constitution. We reach this conclusion because of our opinion that the interest of the momentary protection of the privacy of the householder and the interest in protecting innocent persons from the violence that may stem from the unannounced entry are not of sufficient substance to rise to constitutional stature and require the exclusion of otherwise competent evidence." 264 Or at 65-66.

We followed that analysis in *State v. Bishop, supra,* 288 Or at 353 (quoting *State v. Valentine/Darroch, supra*). Because the officers' action here did not violate defendant's state constitutional rights, the state constitution does not provide a basis for suppressing this evidence. *See State v. Campbell,* 306 Or 157, 163, 759 P2d 1040 (1988) (" 'privacy' is the interest protected by Article I, section 9, * * *.") and *State v. Davis,* 294 Or 227, 236, 666 P2d 802 (1983) (purpose of knock and announce rule is not to protect the privacy and freedom of those within against an entry and arrest or search which the officers were legally authorized to make).

Defendant also argues that in failing to give notice the officers violated defendant's rights under the Fourth Amendment to the United States Constitution.[24] Again, we disagree. The admissibility of evidence obtained by state officers executing a state arrest warrant is measured by a Fourth Amendment "reasonableness" standard. *Ker v. California, supra,* 374 US at 39 (plurality opinion of Justice Clark);[25] *United States v. Mitchell,* 783 F2d 971, 973-74 (10th

---

[24] The Fourth Amendment provides in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

[25] Justice Harlan, concurring in the result in *Ker,* would have measured state action by a Fourteenth Amendment due process "fundamental fairness" standard. 374 US at 44-46.

Notwithstanding our *dictum* in *State v. Bishop, supra,* 288 Or at 354, that in *Ker v. California, supra,* the Supreme Court of the United States "clearly indicated that the knock and announce rule is one of Fourth Amendment constitutional magnitude,"

Cir), *cert den* 479 US 860, 107 S Ct 208, 93 L Ed 2d 138 (1986); *Simons v. Montgomery County Police Officers,* 762 F2d 30, 32 n 1 (4th Cir 1985), *cert den* 474 US 1054, 106 S Ct 789, 88 L Ed 2d 767 (1986).

In *Ker v. California, supra,* a case involving the California knock and announce statute, a plurality of the Supreme Court of the United States suggested that the federal knock and announce statute may have Fourth Amendment roots. Thus, aside from any state statutory violation, there conceivably might be circumstances where the failure of state officers to give notice prior to entering premises might violate the Fourth Amendment. However, in *Ker,* the Supreme Court specifically recognized that an officer's reasonable apprehension of peril could excuse noncompliance with any knock and announce rule that might exist under the Fourth Amendment. 374 US at 40-41; *see also Minnesota v. Olson,* ___ US ___, 110 S Ct 1684, 109 L Ed 2d 85 (1990) (risk of danger to police could justify warrantless entry to arrest or search); *Maryland Penitentiary v. Hayden,* 387 US 294, 298-99, 87 S Ct 1642, 18 L Ed

---

our closer reading of *Ker* and other relevant Supreme Court cases persuades us that the Supreme Court of the United States has never expressly held that compliance with the knock and announce rule is required by the Fourth Amendment. Rather, compliance or noncompliance is merely an indicator of the reasonableness or unreasonableness of the officer's conduct under the circumstances.

In *Miller v. United States, supra,* the Supreme Court recognized that some states had held that noncompliance with their respective knock and announce statutes was justified by exigent circumstances. The Court, however, expressly declined to decide whether the exigent circumstances exception applied in that case because the government had made no exigent circumstances claim. 357 US at 309. The Fourth Amendment was not mentioned in *Miller.* The decision was based upon the court's *supervisory powers* over the administration of criminal justice in the *federal courts.* In *Ker v. California, supra,* 374 US at 40-41, the Supreme Court found justification for the officers' failure to give notice and that the officers' conduct, sanctioned by state law, was not unreasonable under the Fourth Amendment. 374 US at 40. In *Sabbath v. United States,* 391 US 585, 88 S Ct 1755, 20 L Ed 2d 828 (1968), the Supreme Court stated that whether or not exigent circumstances would excuse the government's failure to give notice, the facts in that case did not show exigent circumstances. 391 US at 591.

Lower federal courts and state courts have answered the question both ways. *See e.g., United States v. Francis,* 646 F2d 251, 257-58 (6th Cir), *cert den* 454 US 1082, 102 S Ct 637, 70 L Ed 616 (1981) (Fourth Amendment forbids unannounced entry of a dwelling absent exigent circumstances); *Commonwealth v. Morgan,* 517 Pa 93, 534 A2d 1054 (1987) (violation of rule merely a factor to be considered in assessing claim of constitutional violation on grounds of unreasonable search); *State v. Vrtiska,* 225 Neb 454, 406 NW2d 114, *cert den* 484 US 863, 108 S Ct 180, 98 L Ed 2d 133 (1987) (unannounced entry to execute search warrant did not violate Fourth Amendment *per se*); *People v. Ouellette,* 78 Ill2d 511, 401 NE2d 507 (1979) (violation not equivalent *per se* to a constitutional violation).

2d 782 (1967) (the Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others).

For the reasons explained above, in this case we find that the officers' failure to give notice was not "unreasonable" under the Fourth Amendment. We therefore find no Fourth Amendment violation.

In sum, assuming that the officers did not comply with the knock and announce requirements of ORS 133.235(6), we hold that their noncompliance was excused. For the same reason, we find no federal constitutional violation. As for Article I, section 9, of the Oregon Constitution, it simply is not applicable here.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**CARSON, J.,** specially concurring.

The majority has fashioned a clear test to be applied to determine when the "knock and announce" requirements of ORS 133.235(6) will be excused. The test is good as far as it goes. But, because the test does not have a subjective component, I believe that the test is faulty.

The test propounded by the majority has an objective test ("would lead a reasonable person to believe"). 310 Or at 637. The test makes no inquiry as to the subjective belief of the officer making the unannounced entry. It should.

In my view, the excusal of statutory compliance of "knock and announce" is based upon the tenet of the apprehension of peril. The apprehension must be reasonable (objective test). But, the apprehension must exist; that is, the officer relying on the excuse must have an actual apprehension of peril (subjective test). The test approved by the majority only looks to what a reasonable person would believe and permits the excusal of the statutory requirement of knocking and announcing before a forced entry even in cases where the officer, in fact, had no apprehension of peril.

From my review of the legislative history (including the appellate cases relied upon by the legislature) cited by the majority, I am convinced that the legislature focused initially upon the apprehension of peril held by the entering officers

and, only then, upon whether the apprehension was reasonable. *See, e.g., State v. Arce,* 83 Or App 185, 197, 730 P2d 1260 (1986) (Van Hoomissen, J., dissenting).

The majority's rationale for the obviation of the statutory requirement to knock and announce (as expressed in the text preceding the statement of the majority's rule) suggests to me a methodology that would first examine whether the officer had an apprehension of peril (the reason for the excuse); then, and only then, would that apprehension be examined to determine whether it was reasonable. The majority's test leaps over the first part of the methodology and addresses only the second. That approach allows a finding of excuse without any inquiry of the officer's belief. The majority's only question is: Should an officer reasonably have been apprehensive? That is not the correct inquiry.

In this case, there was testimony that the officers selected forced entry "[b]ecause of the potential danger involved." The entering officers were aware of the information about defendant set forth in the majority opinion. Here, there was both a subjective and an objectively reasonable apprehension of peril. Therefore, I specially concur.